**CT Corporation**

**Service of Process Transmittal**
10/17/2017
CT Log Number 532123480

**TO:** Jennifer Lauro
The Hanover Insurance Group
N-430, 440 Lincoln St
Worcester, MA 01653-0002

**RE:** **Process Served in New York**

**FOR:** Hanover Specialty Insurance Brokers, Inc.  (Domestic State: VA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | DELL'S MARASHIANO CHERRIES, CO., INC., Pltfs. vs. HANOVER INSURANCE GROUP and HISCOX INSURANCE COMPANY, Dfts. // To: Hanover Specialty Insurance Brokers, Inc. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Verified Complaint, Verification, Exhibit(s) |
| **COURT/AGENCY:** | Kings County: Supreme Court, NY<br>Case # 5189642017 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, New York, NY |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 10/17/2017 postmarked on 10/13/2017 |
| **JURISDICTION SERVED :** | New York |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service of this summons, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Richard A. Luthmann<br>THE LUTHMANN LAW FIRM, PLLC<br>1811 Victory Boulevard<br>Staten Island, NY 10314<br>718-447-0003 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/18/2017, Expected Purge Date: 10/23/2017<br><br>Image SOP<br><br>Email Notification,  Service of Process  ogclitmail@hanover.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 111 8th Ave Fl 13<br>New York, NY 10011-5213 |
| **TELEPHONE:** | 212-590-9070 |

Page 1 of  1 / SH

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**DEPARTMENT OF STATE**
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231-0001

DOS-470 (Rev. 10/09)

Return Services Requested



U.S. POSTAGE PITNEY BOWES

ZIP 12210    $ 010.00
02 1W
0061321631 OCT 13 2017

USPS CERTIFIED MAIL

USPS CERTIFIED MAIL

9214 8969 0059 7937 2592 35

201710120299
C/O C T CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK NY, 10011

State of New York - Department of State
Division of Corporations

Party Served:                              Plaintiff/Petitioner:
 HANOVER SPECIALTY INSURANCE BROKERS,         DELL'S MARASHIANO CHERRIES,
 INC.                                         CO., INC


C/O C T CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK,  NY 10011


Dear Sir/Madam:
Enclosed herewith is a legal document which was served upon the Secretary of
State on 10/05/2017 pursuant to SECTION 306 OF THE BUSINESS CORPORATION LAW.
 This copy is being transmitted pursuant to such statute to the address
provided for such purpose.


                                        Very truly yours,
                                   Division of Corporations

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------------------------------------X
DELL'S MARASHIANO CHERRIES, CO., INC, DELL'S
CHERRIES, LLC, and DELL'S HOLDING COMPANY, INC.

Index No.: 518964/2017

**SUMMONS**

Plaintiff,

-against-

HANOVER INSURANCE GROUP, and HISCOX
INSURANCE COMPANY

Defendant,

------------------------------------------------------------------------X

**PLAINTIFF'S ADDRESS**

175 – 177 Dikeman Street
Brooklyn, NY 11234

SERVED BY

SINCE 1924

**WWW.SERVICO.COM**

*SPECIALISTS IN ALL
LEGAL PAPERS*

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to

serve a copy of your answer, or, if the complaint is not served with this summons, to serve

a notice of appearance, on Plaintiffs attorney within <u>20 days</u> after service of this summons,

exclusive of the day of service (or within <u>30 days</u> after service is complete if this summons

is not personally delivered to you within the State of New York); and in the case of your

failure to appear or answer, judgment will be taken against you by default for the relief

demanded in the complaint.

The basis of venue is PLAINTIFFS business in Kings County, New York.

DATED:  Staten Island, New York
            September 7, 2017

Respectfully submitted,
THE LUTHMANN LAW FIRM, PLLC

By: _____
        Richard A. Luthmann
        1811 Victory Boulevard

1

Staten Island, NY 10314
Tel:    (718) 447-0003
Fax:  (347) 252-0254
ruthmann@luthmannfirm.com

TO:    Hanover Insurance Group
       25800 Northwestern Highway
       Suite 420
       Southfield, MI 48075

       Hiscox Inc.
       711 Westchester Avenue
       Suite 402
       White Plains, NY 10604

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

------------------------------------------------------------------------X

**Index No.:** 518964/2017

DELL'S MARASHIANO CHERRIES, CO., INC, DELL'S
CHERRIES, LLC, and DELL'S HOLDING COMPANY, INC.

Plaintiffs,

**VERIFIED
COMPLAINT**

-against-

HANOVER INSURANCE GROUP, and HISCOX
INSURANCE COMPANY,

Defendants.

------------------------------------------------------------------------X

Plaintiffs DELL'S CHERRIES, LLC, by their attorneys THE LUTHMANN LAW

FIRM, PLLC, alleges the following upon information and belief for their complaint against

Defendant HANOVER INSURANCE GROUP.

## PRELIMINARY STATEMENT

1.     The instant complaint seeks declaratory judgment in the case of Antoinette

Mondella vs. Dell's Marashiano Cherries, Co, Inc., Dell's Cherries, LLC and Dell's Holding

Company, under index number 511978/22017 in Kings County, New York for Breach of

Contract, Unjust Enrichment and Promissory Estoppel. (Hereinafter referred to as "THE

MONDELLA LAWSUIT").

2.     Antoinette Mondella was justifiably terminated by Dell's Marashiano

Cherries, Co, Inc., Dell's Cherries, LLC and Dell's Holding Company.

3.     In this instant action Plaintiffs DELL'S MARASHIANO CHERRIES, CO,

INC., DELL'S CHERRIES, LLC AND DELL'S HOLDING COMPANY (hereinafter referred

to as "DELL'S") seeks to recover monies owed to Plaintiff DELL'S by Defendants

3

HANOVER INSURANCE and HISCOX INSURANCE COMPANY, INC., (hereinafter referred to as "HANVOER" and "HISCOX") under an existing insurance policy that should have covered them for THE MONDELLA LAWSUIT.

4.      HANOVER is a private insurance company that provided Employment Practices Liability insurance coverage to Plaintiff from August 22, 2016 to August 22, 2017 under policy number LHYD019412200.

5.      The insurance policy issued by HISCOX a private company offering management liability policy for directors and officers from May 13, 2017 to May 13, 2017. The policy number is UVA 1556450.17.

6.      Defendant HANOVER and HISCOX failed to provide coverage for Plaintiff DELL'S at the commencement of THE MONDELLA LAWSUIT on June 19, 2017.

7.      This is an action for Declaratory Judgment and Breach of Contract against Defendants HANOVER and HISCOX.

## PARTIES

8.      Plaintiffs DELL'S is a licensed corporation to do business in the State of New York, County of Kings.

9.      Defendant HANOVER is a Michigan based corporation that is licensed to do business in the State of New York.

10.     Defendant HISCOX is an Illinois based corporation that is licensed to do business in the State of New York.

11.     Venue is proper in Kings County because it is where the Plaintiff's business is located.

4

## FACTS COMMON TO ALL ACCOUNTS

12.    Plaintiffs DELL'S is in the business of manufacturing maraschino cherries.

13.    Plaintiffs DELL'S has been in business over sixty (60) years at the same location in Brooklyn, New York.  The address is 175 – 177 Dikeman Street Brooklyn, NY 11231, (hereinafter referred to as the "PREMISES").

14.    Defendant HANOVER is an insurance company who provides Employment Practices Liability insurance coverage to Plaintiff.

15.    Defendant HISCOX is an insurance company who provides Director and Operations insurance coverage to Plaintiff.

16.    Plaintiffs executed a valid contract with Defendant HISCOX for insurance coverage on May 10, 2017.  (See attached hereto as **Exhibit "A"** HISCOX insurance policy Endorsement, hereinafter referred to as the "CONTRACT").

17.    HISCOX provided Plaintiff DELL'S with an insurance policy with a coverage of $1,000.000.00 for management liability for the directors and officers.

18.    Once THE MONDELLA LAWSUIT was commenced against DELL'S, HANOVER sent a letter whereby they were declining coverage for DELL'S.

19.    HANOVER states THE MONDELLA LAWSUIT alleges in their "Background" that Antoinette Mondella was the original owner of DELL'S and her son Arthur Mondella, Jr. asked to purchase her shares for $102,000.00 in 2004.  Further, Antoinette Mondella alleges she made several loans to DELL'S and that DELL'S owes her $92,937.01 not including interest, see page 2. (See attached hereto as **Exhibit "B"** is a true copy of the HANOVER letter dated July 27, 2017).

5

20.    Defendants have a duty and obligation to pay Plaintiffs under the insurance policy.

21.    Further, the HANOVER letter states that under Section 3 of Coverage Evaluation that no coverage is available under the applicable policy.

22.    HANOVER /HISCOX and Plaintiffs were in a contract.

23.    HANOVER /HISCOX did not abide by the terms and agreement in the Contract.

24.    HANOVER /HISCOX breached the terms of their contract with Plaintiff.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS
## DECLARATORY JUDGMENT

25.    Plaintiff realleges and incorporates herein paragraphs 1 through 24 above as if fully stated in this first cause of action and further allege as follows.

26.    A bona fide justiciable and substantial controversy exists between Plaintiff and Defendant.

27.    Plaintiffs and Defendant hold adverse legal interests as to either present or prospective obligations.

28.    A judgment would serve a useful purpose in clarifying or settling the legal issues.

29.    A judgment would finalize the controversy and offer relief from uncertainty.

30.    Plaintiff has no adequate remedy at law.

## AS AND FOR SECOND CAUSE OF ACTION AGAINST DEFENDANTS
## BREACH OF CONTRACT

31.    Plaintiff realleges and incorporates herein paragraphs 1 through 30 above

6

as if fully stated in this first cause of action and further allege as follows.

32. Defendants were negligent against Plaintiff as they breached their duty.

33. Plaintiff entered into a contract with Defendants.

34. This contract was valid under the laws of the State of New York.

35. There was performance by Plaintiff paying the premiums of the policy.

36. Defendants did not perform under the terms and conditions of the contract.

37. Plaintiff suffered damages attributable to the breach of contract.

38. Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs ask for a judgment in their favor against the Defendants as follows:

A. On the First Cause of Action, Declaratory Judgment against Defendants HANOVER INSURANCE GROUP and HISCOX INSURANCE COMPANY that the Defendants are obligated to defend and cover the Plaintiff in this family litigation; and,

B. On the Second Cause of Action, a sum greater than the minimum jurisdictional amounts of this court to be proved at trial in compensatory damages; and

C. Costs, attorney's fees and disbursements of the action; and

D. Such other and further relief as the Court deems just and equitable.

7

DATED:   Staten Island, NY
              September 7, 2017

                                        Respectfully submitted,
                                        THE LUTHMANN LAW FIRM, PLLC


                                        By: _____
                                              Richard A. Luthmann
                                              1811 Victory Boulevard
                                              Staten Island, NY 10314
                                              Tel:   (718) 447-0003
                                              Fax:  (347) 252-0254
                                              ruthmann@luthmannfirm.com

TO:    Hiscox Inc.
          711 Westchester Avenue
          Suite 402
          White Plains, NY 10604

          Hanover Insurance Group
          25800 Northwestern Highway
          Suite 420
          Southfield, MI 48075

8

## VERIFICATION

State of New York, County of Richmond ss.:

DANA BENTZ, I am the President of DELL'S CHERRIES, LLC, successor in interest to DELL'S MARASCHINO CHERRIES, INC being duly sworn, deposes and says: I am the Plaintiff in this action, I have read the foregoing Affidavit to be submitted to the Court and know the contents to be true to my own knowledge, except for those matters alleged to be on information and belief, and as to those matters, I believe them to be true.

DANA BENTZ

Sworn to before me this _____ day
of _____, 20 _____

RICHARD A. LUTHMANN

RICHARD A LUTHMANN
NOTARY PUBLIC
STATE OF NEW YORK
REG.NO:02LU6235872
COMM.EXP:FEB.14,2019

# EXHIBIT "A"



# DECLARATIONS

HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**About This Policy:** This is a Claims-Made Policy, coverage is limited to those Claims first made during the Policy Period or any applicable Discovery Period.

The Insurer does not assume a duty to defend unless expressly provided for in a Coverage Part. When the Insurer does not assume the duty to defend it will advance defense costs in excess of the applicable Retention, subject to the terms of this Policy. Defense Costs are included within, serve to reduce and may completely exhaust the applicable Limits of Liability. Defense Costs shall also reduce the applicable Retention.

Please review this Policy carefully and discuss its terms, conditions and exclusions with your insurance broker or

| Broker No.: | US 0000008 | ARC Excess & Surplus LLC |
|---|---|---|
| Policy No.: | UVA1556450.17 | 113 South Service Road |
| Renewal of: | UVA1556450.16 | Jericho, New York 11753 |

**Private Company Management Liability Policy**

1. Named Entity: Dell's Holding Company, Inc.

   Address: 175 Dikeman St
   Brooklyn, New York 11231-1199

2. Policy period: Inception date: 05/13/2017   Expiration date: 05/13/2018

   Both dates at 12:01 A.M. (Standard Time) at the address of the Named Entity.

3. Policy Aggregate Limit of $ 1,000,000

4. Coverage Summary

| Coverage Part | Coverage Part Limit of Liability | Separate Limit or Shared Limit | Retention | Continuity Date | Premium |
|---|---|---|---|---|---|
| Directors & Officers Liability (DO) | $ 1,000,000 | Separate | $ 10,000 | 05/13/15 | $ 9,385.00 |
| Employment Practices Liability (EPLI) | N/A | | | | |
| Fiduciary Liability(FLI) | N/A | | | | |
| Employed Lawyers Liability (ELAW) | N/A | | | | |

If "N/A" appears in the Coverage Part Limit of Liability column for any of the above Coverage Parts, such Coverage Part was not purchased and no coverage is provided under this Policy with respect to this Coverage Part.

5. Total Premium: $ 9,385.00

   Premium attributed to TRIA $ 94.00

6(a) Reputation Loss Limit: $ 50,000

| 6(b) | Derivative Demand Li | $ 250,000 |
| 6(c) | Additional Executive Limit: | $ 500,000 |
| 6(d) | Voluntary Comp. Loss Limit: | N/A |

| 7. | Notice of Claim to: | Hiscox I  Management Liability Claims c/o Christopher McNulty<br>520 Madison Avenue, 32nd Floor New York, NY 10022<br>Fax - 212-922-9652  I  Email - d&oclaims@hiscox.com |

| 8. | Attachments: | (1) E4132.1. New York Amendatory Endorsement<br>(2) E999.2. Bodily Injury/Property Damage Exclusion (Absolute-PRV)<br>(3) E3853.1. Antitrust Claim Coverage - Sublimit [D&O]<br>(4) E3828.1. Prior Acts Exclusion<br>(5) E9999.2. Cap on Losses from Certified Acts of Terrorism Endorsement<br>(6) E9997.4. Policyholder Disclosure Notice of Terrorism Insurance Coverage<br>(7) E3822.1. Nuclear Energy Exclusion |

IN WITNESS WHEREOF, the Insurer indicated above has caused this Policy to be signed by its President and Secretary, but this Policy shall not be effective unless also signed by our duly authorized representative.

President

Secretary

Authorized Representative

05/10/2017

Date

PVT D001 CW (07/09)



**Endorsement 1**

NAMED INSURED: Dell's Holding Company, Inc.

**E4132.1 New York Amendatory Endorsement**

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE
FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS.
HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.



HISCOX

<u>Endorsement 1</u>

NAMED INSURED: Dell's Holding Company, Inc.

<u>E4132.1 New York Amendatory Endorsement</u>                    Page 1 of 12

This endorsement modifies only the referenced terms and conditions of the **Coverage Part(s)** selected below.  All non-selected **Coverage Part(s)** and non-referenced terms and conditions of the selected **Coverage Part(s)** remain unchanged.

____  **Declarations**
_X_  **General Terms and Conditions**
_X_  **D&O Coverage Part**
_X_  **EPLI Coverage Part**
_X_  **FLI Coverage Part**
_X_  **ELAW Coverage Part**

In consideration of the premium charged, it is understood and agreed that the **Coverage Part(s)** selected above, if purchased,  are modified as follows: .

1.   Clause II. **Definitions** of the **General Terms and Conditions** is amended to include the following additional definitions at the end thereof:

   NY-A.   **Claims-Made Relationship** means that period of time between the effective date of the first claims-made policy between the **Insurer** and the **Named Entity** and the cancellation or nonrenewal of the last consecutive claims-made policy between the **Insurer** and the **Named Entity**, where there has been no gap in coverage, but does not include any period covered by the **Automatic Discovery Period** or the **Optional Discovery Period**.

   NY-B.   **Termination of Coverage** means, with respect to this Policy or any **Coverage Part** and whether done at the direction of the **Insurer** or at the direction of the **Named Entity** and whether done at any time after the inception of the **Policy Period**:

      (a)   cancellation or nonrenewal of this Policy or any **Coverage Part**;
      (b)   **Change in Control**; or
      (c)   a decrease in any **Coverage Part Limit of Liability**, a reduction in coverage, an increased Retention, the addition of a new exclusion that results in the removal of coverage previously provided, or any other change in coverage less favorable to the **Insureds**.  The **Automatic Discovery Period** granted for these reasons and the **Optional Discovery Period** offered for these reasons shall only apply in regard to that coverage terminated.



**HISCOX**

## Endorsement 1

NAMED INSURED: Dell's Holding Company, Inc.

**E4132.1 New York Amendatory Endorsement**                                    Page 2 of 12

2.  Clause IV. **Limits of Liability** of the **General Terms and Conditions** is modified to the extent to provide the following:

    **Automatic Discovery Period Limit of Liability**
    In the event of **Termination of Coverage** of the Policy, the limit of liability available during the **Automatic Discovery Period** shall be equal to the amount of coverage remaining under the **Policy Aggregate Limit of Liability** set forth in the Declarations.

    In the event of **Termination of Coverage** of a **Coverage Part**, the limit of liability available during the **Automatic Discovery Period** for such **Coverage Part** shall be equal to the amount of coverage remaining under the applicable **Coverage Part Limit of Liability** set forth in the Declarations.

    All other terms and provisions of this Policy shall continue to apply during the **Automatic Discovery Period**.

    **Optional Discovery Period Limit of Liability**

    The limit of liability available during any purchased **Optional Discovery Period** shall be as follows:

    A.  If Section 13. **Exceptions to Minimum Statutory Requirements** of this Amendatory Endorsement applies to the **Named Entity** the limit of liability available for the **Optional Discovery Period** shall be equal to the amount of coverage remaining under:

        (1) the **Policy Aggregate Limit of Liability** set forth in the Declarations in the event of **Termination of Coverage** of the Policy; or
        (2) the applicable **Coverage Part Limit of Liability** set forth in the Declarations in the event of **Termination of Coverage** of a **Coverage Part.**

    B.  If Section 13. **Exceptions to Minimum Statutory Requirements** of this Amendatory Endorsement *does not* apply to the **Named Entity**:

        (1) if as of the effective date of **Termination of Coverage**, the **Claims-Made Relationship** has been in effect without interruption for at least three (3) years, the limit of liability for the **Optional Discovery Period** shall be equal to:

            (a) one hundred percent (100%) of the **Policy Aggregate Limit of Liability** in effect immediately prior to **Termination of Coverage** in the event of **Termination of Coverage** of the Policy; or
            (b) one hundred percent (100%) of the applicable **Coverage Part Limit of Liability** in effect immediately prior to **Termination of Coverage** in the event of **Termination of Coverage** of a **Coverage Part.**


HISCOX

### Endorsement 1

NAMED INSURED: Dell's Holding Company, Inc.

**E4132.1 New York Amendatory Endorsement**                    Page 3 of 12

> (2) if as of the effective date of **Termination of Coverage**, the **Claims-Made Relationship** has been in effect without interruption for less than three (3) years, the limit of liability for the **Optional Discovery Period** shall be the greater of:
>
> > (a) the amount of coverage remaining under the
> > > (i) **Policy Aggregate Limit of Liability** set forth in the Declarations at the time of the subject **Claim** is made (in the event of **Termination of Coverage** of the Policy); or
> > > (ii) the applicable **Coverage Part Limit of Liability** set forth in the Declarations at the time of the subject **Claim** is made (in the event of **Termination of Coverage** of a **Coverage Part**)
> > (b) fifty percent (50%) of the
> > > (i) **Policy Aggregate Limit of Liability** set forth in the Declarations (in the event of **Termination of Coverage** of the Policy); or
> > > (ii) the applicable **Coverage Part Limit of Liability** set forth in the Declarations (in the event of **Termination of Coverage** of a **Coverage Part**).

Notwithstanding the above, where **Termination of Coverage** is due only to a decrease in the **Policy Aggregate Limit of Liability** (or **Coverage Part Limit of Liability**, if applicable), the limit of liability for any purchased **Optional Discovery Period** (if the **Insurer** is obligated to offer an **Optional Discovery Period** for such reason) shall be no greater than the amount of such decrease. In such instance, the **Policy Aggregate Limit of Liability** (or **Coverage Part Limit of Liability**, if applicable) provided for the **Optional Discovery Period** shall replace, and shall not be in addition to, the **Policy Aggregate Limit of Liability** (or **Coverage Part Limit of Liability**, if applicable) provided for the **Automatic Discovery Period**.

3. Clause VI. **Reporting and Notice** of the **General Terms and Conditions** is modified to the extent necessary to provide the following:

    Failure to timely give notice of a **Claim** shall not invalidate coverage for such **Claim** unless the failure to do so has prejudiced the **Insurer**.

    Notwithstanding the foregoing, coverage may not be invalidated if it shall be shown not to have been reasonably possible to give notice within the prescribed time and that notice was given as soon as was reasonably possible.

    Notice given by or on behalf of the **Named Entity**, or written notice by or on behalf of the injured party or any other claimant, to any licensed agent of the **Insurer** in the state of New York, with particulars sufficient to identify the **Named Entity**, shall be deemed notice to the **Insurer**.



**HISCOX**

## Endorsement 1

NAMED INSURED: Dell's Holding Company, Inc.

**E4132.1 New York Amendatory Endorsement**                          Page 4 of 12

4.   Clause VII. **Cancellation** of the **General Terms and Conditions** is deleted in its entirety and replaced by the following:

**Cancellation**

1.   This Policy may be cancelled by the **Named Entity** by giving advance written notice to the **Insurer** stating when thereafter such cancellation shall be effective.

2.   If this Policy has been in effect for sixty (60) days or less, the **Insurer** may cancel this Policy by mailing to the **Named Entity** written notice of cancellation at least:

   a.   twenty (20) days before the effective date of cancellation if cancellation is for any reason not included in paragraph 2.b. below.
   b.   fifteen (15) days before the effective date of cancellation If cancellation is for any of the following reasons:

      (1)   Nonpayment of premium;
      (2)   Conviction of a crime arising out of acts increasing the hazard insured against;
      (3)   Discovery of fraud or material misrepresentation in the obtaining of this Policy or in the presentation of a **Claim**;
      (4)   After issuance of this Policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to the inception of the current **Policy Period**;
      (5)   Material change in the nature or extent of the risk, occurring after the issuance or last annual renewal anniversary date of the Policy that causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the Policy was issued or last renewed;
      (6)   Required pursuant to a determination by the New York State Superintendent of Financial Services that continuation of the **Insurer's** present premium volume would jeopardize the **Insurer's** solvency or be hazardous to the interest of the **Insurer's** policyholders, creditors or the public;
      (7)   Required pursuant to a determination by the New York State Superintendent of Financial Services that the continuation of this Policy would violate, or would place the **Insurer** in violation of any provision of the New York Insurance Code; or

      (8)   Revocation or suspension of the **Insured's** license to practice their profession.

   If this Policy has been in effect for more than sixty (60) days or if this Policy is a renewal or continuation of a Policy issued by the **Insurer**, the **Insurer** may cancel this Policy only for one or more of the reasons listed above in paragraph 2.b. provided a written notice of cancellation is mailed to the **Named Entity** at least sixty (60) days before the effective date of cancellation, or fifteen (15) days before the effective date of cancellation if the reason for cancellation is nonpayment of premium.

3.   The **Insurer** will mail notice of cancellation to the **Named Entity** by registered, certified or other first class mail, at the **Named Entity's** address shown in the Declarations.



**HISCOX**

<u>Endorsement 1</u>

NAMED INSURED: Dell's Holding Company, Inc.

<u>E4132.1 New York Amendatory Endorsement</u>                    Page 5 of 12

5.   Clause VIII. **Discovery Period** of the **General Terms and Conditions** is deleted in its entirety
     and replaced by the following:

     **Discovery Period**

     A.   ADVICE REGARDING DISCOVERY PERIODS

          The **Insurer** will notify the **Named Entity**, in writing, of the **Automatic Discovery Period**,
          and the availability of, the premium for and the importance of purchasing an **Optional
          Discovery Period** (the "Advice").  The Advice shall be sent to the **Named Entity** no
          earlier than the date of notification of **Termination of Coverage** nor later than thirty (30)
          days after the effective date of **Termination of Coverage**.  If this Policy has been
          terminated for non-payment of premium or fraud, the **Insurer** shall not be required to
          provide a premium quotation for the **Optional Discovery Period** unless requested by the
          **Named Entity**.

          The **Insurer** has no obligation to send the Advice if Section 13. **Exceptions to Minimum
          Statutory Requirements** of this Amendatory Endorsement applies to the **Named Entity**.

     B.   AUTOMATIC DISCOVERY PERIOD

          In the event of **Termination of Coverage**, the **Insurer** will provide, at no additional
          premium, a period of sixty (60) days, beginning on the effective date of **Termination of
          Coverage** during which the **Insureds** shall be permitted to report to the **Insurer Claims**
          first made against the **Insureds** during such sixty (60) day period that are for or based
          upon **Wrongful Acts** committed or allegedly committed after the applicable prior acts date
          (if any) and prior to the effective date of **Termination of Coverage** and otherwise covered
          by this Policy.  Such extension of coverage shall be referred to as the "**Automatic
          Discovery Period**."

          Provided, however, that the **Insurer** has no obligation to grant the **Automatic Discovery
          Period** for a **Termination of Coverage** for the reasons outlined in subparagraph (c) of
          that definition if Section 13. **Exceptions to Minimum Statutory Requirements** of this
          Amendatory Endorsement applies to the **Named Entity**.

     C.   OPTIONAL DISCOVERY PERIOD

          In the event of **Termination of Coverage**, the **Insureds** shall have the right, upon
          payment of the applicable additional premium, to an extension of the coverage granted by
          this Policy for the period offered by the **Insurer**.  The periods offered by the **Insurer** shall
          be one (1) year, two (2) years, three (3) years, four (4) years, five (5) years and six (6)
          years.  Such extension of coverage shall be referred to as the "**Optional Discovery
          Period**" and shall commence upon the effective date of **Termination of Coverage**.  This
          **Optional Discovery Period** will apply only to **Claims** first made against the **Insureds**
          during the **Optional Discovery Period** that are for or based upon **Wrongful Acts**
          committed or allegedly committed after the applicable prior acts date (if any) and prior to
          the effective date of **Termination of Coverage** and otherwise covered by this Policy.  The
          **Automatic Discovery Period** shall be included in and shall be a part of the **Optional
          Discovery Period**.


**HISCOX**

<u>Endorsement 1</u>

NAMED INSURED: Dell's Holding Company, Inc.

<u>E4132.1 New York Amendatory Endorsement</u>                    Page 6 of 12

Provided, however, that the Company has no obligation to offer:

(1) any **Optional Discovery Period** for a **Termination of Coverage** for the reasons outlined in subparagraph (c) of that definition if Section 13. **Exceptions to Minimum Statutory Requirements** of this Amendatory Endorsement applies to the **Named Entity**; or

(2) two (2), three (3), four (4), five (5) and six (6) year **Optional Discovery Period** options if Section 13. **Exceptions to Minimum Statutory Requirements** of this Amendatory Endorsement applies to the **Named Entity**.

D.   TERMINATION OF COVERAGE FOR NON-PAYMENT OF PREMIUM OR FRAUD (APPLICABLE TO POLICIES IN EFFECT LESS THAN ONE (1) YEAR)

The **Insureds** shall have no right to elect and purchase the **Optional Discovery Period** if:

(a) coverage is terminated because of non-payment of premium or fraud; and
(b) the **Claims-Made Relationship** has been less than one (1) year at the effective date of such **Termination of Coverage**.

E.   NOTICE OF WRITTEN ACCEPTANCE OF THE OPTIONAL DISCOVERY PERIOD

The right to purchase the **Optional Discovery Period** shall lapse unless a written notice of the election of, and full payment of additional premium for, the **Optional Discovery Period** is received by the **Insurer** within the greater of:

(a) sixty (60) days from the effective date of **Termination of Coverage**; or
(b) thirty (30) days after the **Insurer** has mailed or delivered the Advice as described in paragraph A. above (if the **Insurer** is obligated to give such written Advice).

In the event such written notice of election and the payment of the additional premium are not received by the **Insurer** within such time, there shall be no right to purchase the **Optional Discovery Period** at a later date.

F.   PREMIUM CHARGE FOR THE OPTIONAL DISCOVERY PERIOD

(a) The additional premium for the **Optional Discovery Period** shall be based upon the rates in effect on the date the Policy was issued or last renewed.  The premium for the **Optional Discovery Period** shall be commensurate with the coverage provided. Upon **Termination of Coverage** on a date other than the policy's anniversary date, the cost of the **Optional Discovery Period** shall be appropriately reduced.

(b) The additional premium for the **Optional Discovery Periods** shall be priced in accordance with the specifications of the New York Regulation 121 Policyholder Notices attached to this Policy.

(c) As a condition to the right to purchase the **Optional Discovery Period** the total premium for this Policy must have been paid.  Upon **Termination of Coverage**:



**HISCOX**

**Endorsement 1**

NAMED INSURED: Dell's Holding Company, Inc.

      (1)  Any return premium due to the **Named Entity** shall be credited toward the premium for the **Optional Discovery Period** if the **Named Entity** elects such coverage.

      (2)  Where premium is due to the **Insurer** for coverage during the **Claims-Made Relationship**, any monies received by the **Insurer** from the **Named Entity** as payment for the **Optional Discovery Period** shall first be applied to such premium owing for this Policy.

    (d) The **Optional Discovery Period** shall not be cancelable except by the **Insurer** for non-payment of the premium amount due for the **Optional Discovery Period**. The entire premium for the **Optional Discovery Period** shall be deemed fully earned at its commencement without any obligation by the **Insurer** to later return any portion thereof.

G.    COVERAGE FOR CORPORATIONS, PARTNERSHIPS AND OTHER ENTITIES

If the **Named Entity** has been placed in liquidation or bankruptcy, or permanently ceases operation, and if the **Named Entity** or its designated trustee, although entitled to, does not purchase an **Optional Discovery Period**, any other **Insureds** under this Policy shall have one hundred-twenty (120) days from the effective date of the **Termination of Coverage** to purchase an **Optional Discovery Period** on behalf of itself/themselves. The **Insurer** has no obligation to provide notice of this right to such **Insureds**, but may charge a premium commensurate with such coverage. If such person does not pay the required additional premium when due, then the **Optional Discovery Period** for such person shall be void.

Provided, however, the Insurer has no obligation to provide an **Optional Discovery Period** to such **Insureds** if Section 13. **Exceptions to Minimum Statutory Requirements** of this Amendatory Endorsement applies to the **Named Entity**.

H.    COVERAGE FOR INSUREDS WITH PRIOR AFFILIATION

A person employed or otherwise affiliated with the **Named Entity** and covered by the **Named Entity's** policy during such affiliation shall continue to be covered under this Policy and any discovery period after such affiliation has ceased for such person's covered **Wrongful Acts** during such affiliation.

I.    PRIOR ACTS DATE ADVANCEMENT

If a prior acts date has been established by endorsement for this Policy or any **Coverage Part**, it may not be changed during the term of the **Claims-Made Relationship**, the **Automatic Discovery Period** or the **Optional Discovery Period**.

6.    Clause XV. **Action Against Insurer** of the **General Terms and Conditions** is deleted in its entirety and replaced by the following:



**HISCOX**

<u>Endorsement 1</u>

NAMED INSURED: Dell's Holding Company, Inc.

<u>E4132.1 New York Amendatory Endorsement</u>                    Page 8 of 12

**Action Against Insurer**

No action shall be taken against the **Insurer** unless there shall have been full compliance by the **Insureds** with all the terms and conditions of this Policy. If the **Insurer** does not pay a judgment covered under this Policy within thirty (30) days from the service of notice of the judgment upon the **Insureds** or its attorney and the **Insurer**, then an action may be brought against the **Insurer** for the amount of the judgment, not exceeding the amount of the applicable limits of liability under this Policy, except during a stay or limited stay of execution against the **Insurer** on such judgment. No person or organization shall have any right under this Policy to join the **Insurer** as a party to any **Claim** against the **Insureds** nor shall the **Insurer** be impleaded by the **Insureds** or their legal representatives in any such **Claim**.

7. The **General Terms and Conditions** is amended to include the following additional Clauses at the end thereof:

**Loss Information**

Upon written notice by the **Named Entity** or their authorized agent or broker, if any, the **Insurer** shall provide the **Named Entity** with the following loss information for the period of time that the **Insurer** has continuously provided coverage under this Policy:

1. Information on closed **Claims**, including the date and description of **Wrongful Acts**, and amounts of any payments;
2. Information on open **Claims**, including the date and description of **Wrongful Acts**, and amounts of any payments; and
3. Information on notice of any **Wrongful Acts**, including the date and description of **Wrongful Acts**.

The **Insurer** shall mail this loss information to the **Named Entity** or their authorized agent or broker, if any, within ten (10) days after the receipt of such request.

**Notice of Nonrenewal and Conditional Renewal**

1. If the **Insurer** elects not to renew this Policy, the **Insurer** shall send notice as provided in paragraph 3. below, along with the reason for nonrenewal.

2. If the **Insurer** conditions renewal of this Policy upon:

   (a) change of limits;
   (b) change in type of coverage;
   (c) reduction of coverage;
   (d) increased deductible;
   (e) addition of exclusion; or

   (f) increased premiums in excess of ten percent (10%), exclusive of any premium increase due to and commensurate with, insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

   the **Insurer** shall send notice as provided in paragraph 3. below, along with the reason for conditional renewal.



## Endorsement 1

NAMED INSURED: Dell's Holding Company, Inc.

### E4132.1 New York Amendatory Endorsement
Page 9 of 12

3. Notice of nonrenewal and conditional renewal will be provided as follows:

(a) If the **Insurer** decides not to renew this Policy or to conditionally renew this Policy as provided in paragraphs 1. and 2. above, the **Insurer** shall mail or deliver written notice to the **Named Entity** at least sixty (60) days but not more than one hundred twenty (120) days before:
(1) the expiration date of this Policy; or
(2) the anniversary date of this Policy, if this is a continuous policy.

(b) Notice will be mailed or delivered to the **Named Entity** at the address shown in Item 1. of the Declarations, and to its authorized agent or broker, if any. If notice is mailed, proof of mailing shall be sufficient proof of notice.

(c) The **Insurer** will not send notice of nonrenewal or conditional renewal if the **Named Entity** or the **Named Entity's** authorized agent or broker mails or delivers notice that the Policy has been replaced or is no longer desired.

4. If the **Insurer** violates any of the provisions of this subsection by sending the **Named Entity** an incomplete or late nonrenewal or conditional renewal notice prior to the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy and at the lower of the current rates or the prior period's rates until sixty (60) days after such notice is mailed or delivered, unless the **Named Entity**, during this sixty (60) day period, has replaced coverage or elects to cancel.

If late notice is sent on or after the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy for another policy period, at the lower of the current rates or the prior period's rates, unless the **Named Entity** during the additional policy period, has replaced the coverage or elects to cancel.

The Policy aggregate limit of liability will be increased only in proportion to any extension of coverage the **Insurer** is required to grant if a nonrenewal or conditional renewal notice is not provided to the **Named Entity** within the time frame required by New York law.

**Policy Conflicts**
To the extent any term or condition contained in the Policy or any Endorsement attached thereto conflicts with any term or condition contained in this or any other State Amendatory Endorsement attached to the Policy, such terms and conditions most favorable to the **Insureds** shall apply.

8. The definition of **Loss** in the **Definitions** Clause of the **D&O Coverage Part**, the **EPLI Coverage Part**, the **FLI Coverage Part** and the **ELAW Coverage Part**, if purchased, is modifed to the extent necessary to provide the following:

Punitive and exemplary damages shall not be insurable in cases where New York law governs the **claim**.



**HISCOX**

### Endorsement 1

NAMED INSURED: Dell's Holding Company, Inc.

**E4132.1 New York Amendatory Endorsement** Page 10 of 12

9.  The definition of **Pollutants** in the **Definitions** Clause of the **D&O Coverage Part**, the **FLI Coverage Part** and the **ELAW Coverage Part**, if purchased, is deleted in its entirety and replaced with the following:

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

10. The **Exclusions** Clause of the **EPLI Coverage Part**, if purchased, is amended to include the following at the end thereof:

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** subject to New York law made against any **Insured**:

NY-A.   alleging, arising out of or attributable to any intentional discrimination in violation of any law, rule or statute of New York, if any final adjudication establishes that intentional discrimination occurred; provided, however, for purposes of this exclusion, (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any **Individual Insured**; and (2) only facts pertaining to and knowledge possessed by any past, present or future executive director, chief executive officer or chief financial officer (or equivalent positions) of an **Organization** shall be imputed to such **Organization**.

11. The **Defense Costs, Defense Counsel, Settlements & Judgments** Clause of the **D&O Coverage Part**, the **EPLI Coverage Part**, the **FLI Coverage Part** and the **ELAW Coverage Part**, if purchased, is amended to include the following at the end thereof:

**Transfer of Duties When a Limit of Insurance is Used Up**
The following shall only apply for coverage where the **Insurer** has the duty to defend or where the defense duties have been tendered from the **Insureds** to the **Insurer**:

1.  If the **Insurer** concludes that, based on **Wrongful Acts** or **Claims** which have been reported to the **Insurer** and to which this insurance may apply, a limit of insurance shown in the Declarations is likely to be used up in the payment of judgments or settlements, the **Insurer** will notify the first **Named Entity**, in writing, to that effect.

2.  When a limit of insurance described in paragraph 1. has actually been used up in the payment of judgments or settlements:

    (a)   The **Insurer** will notify the first **Named Entity**, in writing, as soon as practicable, that:

         (1)   Such a limit has actually been used up; and
         (2)   The **Insurer's** duty to defend **Claims** subject to that limit has also ended.



**HISCOX**

<u>Endorsement 1</u>

NAMED INSURED: Dell's Holding Company, Inc.

   (b)  The **Insurer** will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all **Claims** which are subject to that limit and which are reported to the **Insurer** before that limit is used up.  That insured must cooperate in the transfer of control of said **Claims**.

      The **Insurer** agrees to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such **Claims** until such transfer is completed, provided the appropriate Insured is cooperating in completing such transfer.

      The **Insurer** will take no action whatsoever with respect to any **Claim** that would have been subject to that limit, had it not been used up, if the **Claim** is reported to the **Insurer** after that limit of insurance has been used up.

   (c)  The **Named Entity**, and any other insured involved in a **Claim** subject to that limit, must arrange for the defense of such **Claim** within such time   period as agreed to between the appropriate insured and the **Insurer**.  Absent any such agreement, arrangements for the defense of such **Claim**   must be made as soon as practicable.

3. The **Named Entity** will reimburse the **Insurer** for expenses the **Insurer** incurs in taking those steps the **Insurer** deems appropriate in accordance with paragraph 2(b) above.  The duty of the **Named Entity** to reimburse the **Insurer** will begin on:
   (a)  The date on which the applicable limit of insurance is used up, if the **Insurer** sent notice in accordance with paragraph 1. above; or

   (b)  The date on which the **Insurer** sent notice in accordance with paragraph 2(a) above, if the **Insurer** did not send notice in accordance with paragraph 1. above

4. The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of the **Insurer's** duty to defend, will not be affected by the **Insurer's** failure to comply with any of the provisions of this condition.

12.  The **Defense Costs, Defense Counsel, Settlements & Judgments** Clause of the **D&O Coverage Part**, the **EPLI Coverage Part**, the **FLI Coverage Part** and the **ELAW Coverage Part**, if purchased, is modified to the extent necessary to provide the following:

  The following shall only apply for coverage where the **Insurer** has the duty to defend or where the defense duties have been tendered to the **Insureds** to the **Insurer**:

  The **Insureds** shall have the right to:  (1) select a defense attorney or to consent to the **Insurer's** choice of defense attorney, which consent shall not be unreasonably withheld; (2) participate in, and assist in the direction of, the defense of any **Claim,** and (3) consent to a settlement, which consent shall not be unreasonably withheld.  The **Insurer** shall have no obligation to grant this right if Section 13. **Exceptions to Minimum Statutory Requirements** of this Amendatory Endorsement applies to the **Named Entity**.


HISCOX

<u>Endorsement 1</u>

NAMED INSURED: Dell's Holding Company, Inc.

<u>E4132.1 New York Amendatory Endorsement</u>                                      Page 12 of 12

13.    **Exceptions to Minimum Statutory Requirements**

Where referenced in any provision of this Amendatory Endorsement, any of the following shall qualify as "applying" to the **Named Entity** as **Exceptions to Minimum Statutory Requirements**:
1. the Policy contains an aggregate Limit of Liability of $5,000,000 or more;
2. the Policy contains a Retention of at least $100,000; or
3. the **Named Entity** is a **Large Commercial Insured**.

A **Large Commercial Insured** is defined as an insured that meets one (1) of the following:

(a) has a net worth of at least $7,500,000, as determined by an independent certified public accountant, as of the **Named Entity's** fiscal year end immediately preceding the Policy's effective date;
(b) has gross assets exceeding $25,000,000 and a net worth of at least $3,000,000, as determined by an independent certified public accountant, as of the **Named Entity's** fiscal year end immediately preceding the Policy's effective date;

(c) is a for-profit business entity that generates annual gross revenues exceeding $25,000,000, and has a net worth of at least $1,500,000, as determined by an independent certified public accountant, as of the **Named Entity's** fiscal year end immediately preceding the Policy's effective date;
(d) is a for-profit business entity that has gross assets exceeding $25,000,000 and generates annual gross revenues exceeding $25,000,000, as determined by an independent certified public accountant, as of the **Named Entity's** fiscal year end immediately preceding the Policy's effective date; or
(e) is a not-for-profit organization or public entity with an annual budget exceeding $25,000,000 for each of its three (3) fiscal years immediately preceding the Policy's effective date.

All other terms and conditions remain unchanged.

PVT E4132 NY (07/09)

Endorsement effective: 05/13/2017          Policy No.:      UVA1556450.17
Endorsement No:          1                 Processed Date: 05/10/2017

By : Carl Bach
(Appointed Representative)



**Endorsement 2**

NAMED INSURED: Dell's Holding Company, Inc.

**E999.2 Bodily Injury/Property Damage Exclusion (Absolute-PRV)**

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.



**HISCOX**

**Endorsement 2**

NAMED INSURED: Dell's Holding Company, Inc.

**E999.2 Bodily Injury/Property Damage Exclusion (Absolute-PRV)**          Page 1 of 1

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below.  All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

      **Declarations**
      **General Terms and Conditions**
X    **D&O Coverage Part**
      **EPLI Coverage Part**
      **FLI Coverage Part**
      **ELAW Coverage Part**

In consideration of the premium charged, it is understood and agreed that the **Coverage Part(s)** selected above are modified as follows:

I.    In Clause IV. **Exclusions** of the **D&O Coverage Part**, Exclusion J. is deleted in its entirety and replaced with the following:
      J.  alleging, arising out of, based upon or attributable to bodily injury, sickness, disease, or death of any person, or damage to, loss of use, or destruction of any tangible property; provided, however, this Exclusion does not apply to a **Securities Claim;**

II.   In Clause III. **Exclusions** of the **EPLI Coverage Part**, Exclusion F. is deleted in its entirety and replaced with the following:
      F.  alleging, arising out, based upon or attributable to bodily injury, sickness, disease, or death of any person, or damage to, loss of use, or destruction of any tangible property; provided, however, this Exclusion shall not apply to a **Claim** for emotional distress or mental anguish arising from a **Wrongful Act;**

All other terms and conditions remain unchanged.

Endorsement effective: 05/13/2017     Policy No.:    UVA1556450.17
Endorsement No:     2               Processed Date:05/10/2017

By : Carl Bach
(Appointed Representative)



**Endorsement 3**

NAMED INSURED: Dell's Holding Company, Inc.

**E3853.1 Antitrust Claim Coverage - Sublimit [D&O]**

---

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE
FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS.
HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

---



HISCOX

### Endorsement 3

NAMED INSURED: Dell's Holding Company, Inc.

__E3853.1 Antitrust Claim Coverage - Sublimit [D&O]__                    Page 1 of 1

This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below. All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.

___   Declarations
___   General Terms and Conditions
_X_   D&O Coverage Part
___   EPLI Coverage Part
___   FLI Coverage Part
___   ELAW Coverage Part

In consideration of the premium charged, it is understood and agreed that the **Coverage Part(s)** selected above is modified as follows:

1. The **DEFINITIONS** Clause is amended to include the following at the end thereof:

   AC-A. **Antitrust Claim** means any **Claim** alleging a violation of the Sherman Antitrust Act or similar federal, state or local statutes governing antitrust violations, price fixing, price discrimination, unfair competition,
   deceptive trade practices and/or monopolies.

2. In the **EXCLUSIONS** Clause, subparagraph Q(ii) is deleted in its entirety.

3. Notwithstanding anything in the Policy to the contrary, all **Loss** arising from **Antitrust Claims** shall be subject to a sublimit of liability of $1,000,000, which shall be part of, and not in addition to, any applicable **Limit of Liability**.


All other terms and conditions remain unchanged.

PVT E3853 CW (06/09)


Endorsement effective: 05/13/2017          Policy No.:      UVA1556450.17
Endorsement No:       3                    Processed Date: 05/10/2017

By : Carl Bach
(Appointed Representative)



**Endorsement 4**

NAMED INSURED: Dell's Holding Company, Inc.

**E3828.1 Prior Acts Exclusion**

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE
FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS.
HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.



## Endorsement 4

NAMED INSURED: Dell's Holding Company, Inc.

<u>E3828.1 Prior Acts Exclusion</u>                                                        Page 1 of 1

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below.  All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

|        |                             |
|--------|-----------------------------|
| ___    | Declarations                |
| _X_    | **General Terms and Conditions** |
| _X_    | **D&O Coverage Part**       |
| ___    | **EPLI Coverage Part**      |
| ___    | **FLI Coverage Part**       |
| ___    | **ELAW Coverage Part**      |

In consideration of the premium charged, it is understood and agreed that the **Coverage Part(s)** selected above is modified as follows:

1.  The **EXCLUSIONS** Clause is amended to include the following paragraph at the end thereof:

    The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

    PA-C.  alleging, arising out of, based upon or attributable to a **Wrongful Act** occurring on or before 05/13/15 of policy (or any subsequent **Related Wrongful Act**).

All other terms and conditions remain unchanged.

PVT E3828 CW (06/09)

Endorsement effective: 05/13/2017          Policy No.:      UVA1556450.17
Endorsement No:        4                   Processed Date:05/10/2017

By : Carl Bach
(Appointed Representative)



**HISCOX**

**Endorsement 5**

NAMED INSURED: Dell's Holding Company, Inc.

**E9999.2 Cap on Losses from Certified Acts of Terrorism Endorsement**

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE
FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS.
HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.


**HISCOX**

**Endorsement 5**

NAMED INSURED: Dell's Holding Company, Inc.

**E9999.2 Cap on Losses from Certified Acts of Terrorism Endorsement**          Page 1 of 1

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO
THE DISCLOSURE REQUIREMENTS OF THE FEDERAL TERRORISM RISK INSURANCE ACT.
THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND
CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

The following is hereby added to the Policy and shall apply to all coverage:
With respect to any one or more "act of terrorism", the Company will not pay any amounts for which we
are not responsible under the terms of the federal Terrorism Risk Insurance Act due to the application
of any clause which results in a cap on our liability for payments for terrorism losses.

The term "act of terrorism" means an act that is certified by the Secretary of the Treasury, in
accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism
pursuant to such Act.  The criteria contained in the federal Terrorism Risk Insurance Act for an "act of
terrorism" include the following:

1.      The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all
        types of insurance subject to the Terrorism Risk Insurance Act; and

2.      The act is a violent act or an act that is dangerous to human life, property or infrastructure and
        is committed by an individual or individuals as part of an effort to coerce the civilian population
        of the United States or to influence the policy or affect the conduct of the United States
        Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk
Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the
Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of
such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject
to the pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism
exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this
Coverage Part.


All other terms and conditions remain unchanged.


INT E9999 CW (01/15)



Endorsement effective: 05/13/2017       Policy No.:     UVA1556450.17
Endorsement No:        5                Processed Date: 05/10/2017

By : Carl Bach
(Appointed Representative)



**HISCOX**

**Endorsement 6**

NAMED INSURED: Dell's Holding Company, Inc.

**E9997.4 Policyholder Disclosure Notice of Terrorism Insurance Coverage**

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.



**HISCOX**

### Endorsement 6

NAMED INSURED: Dell's Holding Company, Inc.

**E9997.4 Policyholder Disclosure Notice of Terrorism Insurance Coverage**      Page 1 of 1

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in2015, the definition of act of terrorism has changed. *As defined in Section 102(1) of the Act:* the term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $94.00, and does not include any charges for the portion of losses covered by the United States government under the Act.

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE MY COVERAGE AND I HAVE BEEN NOTIFIED OF THE PORTION OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Policyholder/Applicant's Signature: _____

Print Name: _____      Date: _____

Insurance Company: _____

INT E9997 CW  (01/15)



Endorsement effective: 05/13/2017          Policy No.:      UVA1556450.17
Endorsement No:          6                 Processed Date:05/10/2017

By : Carl Bach
(Appointed Representative)



**Endorsement 7**

NAMED INSURED: Dell's Holding Company, Inc.

**E3822.1 Nuclear Energy Exclusion**

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE
FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS.
HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.



**HISCOX**

### Endorsement 7

NAMED INSURED: Dell's Holding Company, Inc.

<u>**E3822.1 Nuclear Energy Exclusion**</u>                                          Page 1 of 1

**This endorsement modifies only the referenced terms and conditions of the Coverage Part(s) selected below.  All non-selected Coverage Part(s) and non-referenced terms and conditions of the selected Coverage Part(s) remain unchanged.**

| | |
|---|---|
| \_\_\_ | **Declarations** |
| \_\_\_ | **General Terms and Conditions** |
| \_X\_ | **D&O Coverage Part** |
| \_\_\_ | **EPLI Coverage Part** |
| \_\_\_ | **FLI Coverage Part** |
| \_\_\_ | **ELAW Coverage Part** |

In consideration of the premium charged, it is understood and agreed that the **Coverage Part(s)** selected above is modified as follows:

1.  The **EXCLUSIONS** Clause is amended to include the following exclusion at the end thereof:

    The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

    NE-A.   alleging, arising out of, based upon or attributable to any hazardous properties of any nuclear material, including source material, special nuclear material or byproduct material;

    NE-B.   which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or

    NE-C.   with respect to which:

    (i)   any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    (ii)   the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

All other terms and conditions remain unchanged.



Endorsement effective: 05/13/2017          Policy No.:      UVA1556450.17
Endorsement No:          7                 Processed Date: 05/10/2017

By : Carl Bach
(Appointed Representative)



## Private Company Management Liability Insurance Policy
General Terms and Conditions

In consideration of the premium charged, and in reliance upon the statements made by the **Insureds** in the **Application**, which forms a part of this Policy, the **Insurer** agrees as follows:

**I. Terms and Conditions**  Except for the terms and conditions appearing in these **General Terms and Conditions**, the terms and conditions of each **Coverage Part** shall only apply to that particular **Coverage Part** and in no way shall be construed to apply to any other **Coverage Part**. If any provision in these **General Terms and Conditions** is inconsistent or in conflict with the terms and conditions of any **Coverage Part**, then any defined term referenced in these **General Terms and Conditions** but defined in a **Coverage Part** shall, for purposes of coverage under that **Coverage Part**, have the meaning set forth in that **Coverage Part**.

**II. Definitions**  A.  **Affiliate** means any:

   (i)   entity, other than a **Subsidiary**, which the **Named Entity** or any **Subsidiary** controls or otherwise has the ability to direct the financial or managerial decisions of such entity, whether through the operation of law, oral or written contract or agreement, membership, charter, articles of incorporation or by-law provisions; or

   (ii)  entity, other than a **Subsidiary**, which is granted by oral or written contract the right to control the financial or managerial decisions of the **Named Entity** or any **Subsidiary**;

   provided, however, such coverage as may be provided under this Policy for any entity described in subparagraphs (i) and (ii) of this Definition shall be limited solely to **Wrongful Acts** occurring in the course of the exercise of such control of financial or managerial decisions.

   B.  **Application** means the signed application for the Policy, including any attachments and other materials or information submitted in conjunction with the signed application. The **Application** shall be deemed attached to and part of this Policy. If this Policy is a renewal or replacement of a previous policy or policies issued by the **Insurer**, all signed applications and other materials that were attached to and part of those previous policies shall also be considered part of the **Application** for this Policy. With respect to the **FLI Coverage Part** (if purchased), **Application** shall also mean any public documents filed by the **Named Entity** or any **Subsidiary** with any federal, state, local or foreign regulatory agency.

   C.  **Company** means: (1) the **Named Entity**; (2) any **Subsidiary** thereof; and (3) any **Affiliate** thereof listed by endorsement to this Policy, but solely with respect to the **Coverage Part(s)** indicated on such endorsement. In the event a bankruptcy proceeding shall be instituted by or against a **Company**, the term **Company** shall also mean the resulting debtor-in-possession (or equivalent status outside the United States of America), if any, but only for acts on behalf of a **Company**.

   **Company** does not include and coverage shall not extend under any **Coverage Part** for any **Subsidiary** or **Affiliate**, or an **Individual Insured** of such **Subsidiary** or **Affiliate**, for any **Wrongful Act** committed, attempted, or allegedly committed or attempted, during any time when such entity was not a **Subsidiary** or **Affiliate**.


HISCOX

## Private Company Management Liability Insurance Policy
General Terms and Conditions

D.   **Continuity Date** means the date set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy) as applicable for each **Coverage Part** purchased.

E.   **Coverage Part** means each **Coverage Part** that is purchased by the **Insured** as set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

F.   **Coverage Part Limit of Liability** means the **Coverage Part Limit of Liability** set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

G.   **Discovery Period** means **Discovery Period** as that term is defined in Clause VIII. of these **General Terms and Conditions** and as set forth by endorsement to this Policy.

H.   **Domestic Partner** means a person legally recognized as a domestic or civil union partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by a **Company**.

I.   **Full Annual Premium** means:

   (i)   with regard to a canceled or non-renewed policy, the total annual premium charged for this Policy; or

   (ii)   with regard to a canceled or non-renewed **Coverage Part**, the total annual premium charged for such **Coverage Part**.

J.   **Insurer** means the insurance company set forth in the Declarations.

K.   **Limit of Liability** means any and all of the following (including any sublimit made part thereof) as applicable to this Policy and **Coverage Part** thereof: (i) the **Policy Aggregate Limit of Liability**; (ii) each **Coverage Part Limit of Liability**; (iii) the **Shared Limit(s) of Liability**; and (iv) each **Separate Limit of Liability**.

L.   **Management Control** means: (i) owning interests representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of: the board of directors of a corporation, the management committee members of a joint venture or partnership, or the members of the management board of a limited liability company; or (ii) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of a **Company**, to elect, appoint or designate a majority of: the board of directors of a corporation, the management committee of a joint venture or partnership, or the management board of a limited liability company.

M.   **Named Entity** means the entity set forth in Item 1. of the Declarations.

N.   **Policy Aggregate Limit of Liability** means the **Policy Aggregate Limit of Liability** set forth in Item 3. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

O.   **Policy Period** means the period of time from the inception date set forth in Item 2. of the Declarations to the earlier of the expiration date set forth in Item 2. of the Declarations or the effective date of cancellation of this Policy.

P.   **Related Wrongful Act(s)** means **Wrongful Act(s)** which are the same, repeated or continuous, or **Wrongful Act(s)** which arise from a common causal connection



# HISCOX

## Private Company Management Liability Insurance Policy
General Terms and Conditions

or cause the same or related damages, or a common nexus or nucleus of facts. **Claims** can allege **Related Wrongful Act(s)** regardless of whether such **Claims** involve the same or different claimants, **insureds** or legal causes of action.

Q.  **Separate Limit of Liability** means the applicable **Separate Limit of Liability** (to the extent elected for a **Coverage Part**) set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

R.  **Shared Limit of Liability** means the **Shared Limit of Liability** (to the extent elected for a **Coverage Part**) set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

S.  **Subsidiary** means:

   (i)  any for-profit entity, whose securities are not publicly traded, of which the **Named Entity** has or had **Management Control** ("Controlled Entity") either directly or indirectly through one or more other **Controlled Entities**; and

   (ii)  any not-for-profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by a **Company**.

   Notwithstanding the foregoing, coverage afforded under this Policy with respect to a **Claim** made against any **Subsidiary** or any **Individual Insureds** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time that the **Named Entity** obtained **Management Control** of such **Subsidiary** and prior to the time that such **Named Entity** ceased to have **Management Control** of such **Subsidiary**.

T.  Wrongful Act shall have the same meaning set forth in each applicable **Coverage Part**.

**III. Spouses, Estates, and Legal Representatives**

Subject otherwise to the terms, conditions and limitations of these **General Terms and Conditions** and any applicable **Coverage Part**, coverage shall extend to **Loss** arising from any **Claim** for the **Wrongful Acts** of an **Individual Insured** made against:

A.  the estates, heirs or legal representatives of deceased **Individual Insureds**, and the legal representatives of **Individual Insureds** in the event of such **Individual Insured's** incompetency, insolvency or bankruptcy, provided such persons were **Individual Insureds** at the time the **Wrongful Acts** upon which such **Claims** are based were committed; or

B.  the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) or **Domestic Partner** of an **Individual Insured** for all **Claims** arising solely out of his or her status as the spouse or **Domestic Partner** of an **Individual Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Individual Insured** and the spouse or **Domestic Partner**, or property transferred from the **Individual Insured** to the spouse or **Domestic Partner**; provided, however, this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** of the spouse or **Domestic Partner**, subject to the Policy's terms, conditions and Exclusions.

PVT P001 CW (07/09)



## Private Company Management Liability Insurance Policy
General Terms and Conditions

**IV. Limits of Liability**

Regardless of the number of **Claims** made during the **Policy Period** or **Discovery Period** (if applicable), or any **Claim** deemed to be made during the **Policy Period** or **Discovery Period** pursuant to Clause VI.B. or VI.C., the maximum the **Insurer** shall be liable to pay for all covered **Loss** (including **Defense Costs**) under this Policy shall be as follows:

A. The **Policy Aggregate Limit of Liability** shall be the maximum amount for all **Loss** under the Policy for any and all **Coverage Parts**.

B. The **Coverage Part Limit of Liability** shall be the maximum amount for all **Loss** under the respective **Coverage Part** for which such amount is designated.

Subject to subparagraphs C. or D. below, a **Coverage Part Limit of Liability** may either be a **Shared Limit of Liability** or a **Separate Limit of Liability**, depending upon how designated in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

C. With respect to each **Coverage Part Limit of Liability** designated in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy) as part of a **Shared Limit of Liability**:

The **Shared Limit of Liability** shall be the maximum amount for all **Loss** under any and all **Coverage Parts** set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy) as part thereof, regardless of any amounts remaining under a participating **Coverage Part Limit of Liability**. The **Shared Limit of Liability** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability**.

D. With respect to each **Coverage Part Limit of Liability** designated in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy) as a **Separate Limit of Liability**:

The **Separate Limit of Liability** shall be the maximum amount for all **Loss** under the respective **Coverage Part** for which such amount is designated. The **Separate Limit of Liability** shall be part of, and not in addition to, the **Policy Aggregate Limit of Liability**.

**V. Retention**

The Retentions set forth in the Declarations are separate Retentions pertaining only to the applicable **Coverage Part** for which they are set forth in the Declarations. The application of a Retention under one **Coverage Part** shall not reduce the Retention under any other **Coverage Part**.

In the event a **Claim** triggers a Retention in multiple **Coverage Parts**, then the following shall apply:

A. with regard to **Loss** which is payable under any **Coverage Part** which is subject to a **Separate Limit of Liability**, the Retention applicable to such **Loss** pursuant to the Retention Clause of such **Coverage Part** (or pursuant to any applicable endorsement) shall apply separately to such **Loss**, and the applicable Retention for such **Coverage Part** shall not be reduced by payments of **Loss** made towards the Retention required under any other **Coverage Part**; and

B. with regard to **Loss** which is payable under any **Coverage Part** which is subject to a **Shared Limit of Liability**, the highest applicable Retention of any **Coverage**



## Private Company Management Liability Insurance Policy
General Terms and Conditions

          **Part** triggered under such **Shared Limit of Liability** shall be deemed the Retention applicable to **Loss** arising from such **Claim**.

**VI. Reporting and Notice**    Notice hereunder shall be given in writing at the address set forth in Item 7. of the Declarations. (and Item 6 of the Common Declaration if issued as a package policy) Notice shall reference the policy number set forth in the Declarations, as well as the **Coverage Part(s)** under which the **Claim** is being noticed. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

With respect to all **Coverage Parts**, the following shall apply:

A.    The **Insureds** shall, as a condition precedent to the obligations of the **Insurer** under this Policy, give written notice to the **Insurer** of any **Claim** made against an **Insured** as soon as practicable.

B.    If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause VI.A. above, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which such notice has been given, or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged in the **Claim** of which such notice has been given, shall be considered made at the time such notice was originally given pursuant to Clause VI.A. above.

C.    If during the **Policy Period** or the **Discovery Period** (if applicable) the **Insured(s)** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against the **Insured(s)** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was originally reported.

D.    Any matter which could involve the payment of **Reputation Loss** under the **D&O Coverage Part** shall be reported to the **Insurer** in the same manner as a **Claim** under Clause VI.A. above.

E.    Any matter which could involve the payment of **Voluntary Compliance Loss** under the **FLI Coverage Part** shall be reported to the **Insurer** in the same manner as a **Claim** under Clause VI.A. above.

The **Insured(s)** shall, as a condition precedent to exercising any right to coverage under this Policy, give to the **Insurer** such information, assistance and cooperation as the **Insurer** may reasonably require, and shall include in any notice under Clause VI.A., B., C., D. or E. above a description of the **Claim** or circumstances, the nature of any alleged **Wrongful Acts**, the nature of the alleged or potential damage, the names of all actual or potential claimants, the names of all actual or potential defendants, and the manner in which such **Insured** first became aware of the **Claim** or circumstances.


## HISCOX

## Private Company Management Liability Insurance Policy
General Terms and Conditions

**VII. Cancellation**

This Policy or any individual **Coverage Part** may be canceled by the **Named Entity** at any time by either surrendering or mailing written notice to the **Insurer** or its authorized agent stating: (i) which **Coverage Part(s)** is/are to be canceled or that the entire Policy is to be canceled; and (ii) when thereafter such cancellation shall be effective. In no event shall such cancellation be effective prior to the **Insurer's** receipt of such notice or such surrender.

This Policy may be canceled by or on the behalf of the **Insurer** only in the event of non-payment of premium by the **Insured**. In the event of non-payment of premium by the **Insured**, the **Insurer** may cancel this Policy by written notice stating when, not less than fifteen (15) days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender.

If the Policy or any **Coverage Part** shall be canceled by the **Named Entity**, the **Insurer** shall retain the short rate proportion of the applicable premium herein.

If the Policy is canceled by the **Insurer**, the **Insurer** shall retain the pro rata proportion of the applicable premium herein.

Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice as set forth above is also set forth in any law controlling the construction thereof, the period set forth above shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in the controlling law.

**VIII. Discovery Period**

A.    **Cancellation or Non-Renewal**

If the Policy or any **Coverage Part** is either cancelled or not renewed for any reason other than non-payment of premium, the **Named Entity** shall have the right to purchase a **Discovery Period** for a length of time indicated by endorsement to this Policy, subject to the following:

(i)    The premium for the purchased **Discovery Period** shall be the **Full Annual Premium** multiplied by the applicable percentage amount set forth by endorsement to this Policy. If no such percentage is set forth, or the percentage is set forth as "to be determined," then the premium for such **Discovery Period** shall be an amount as the **Insurer** may reasonably decide.

(ii)    Unless notice of election and the premium contemplated above are received by the **Insurer** within thirty (30) days of the cancellation or non-renewal date, the **Insured's** rights contained in this Clause shall lapse.

(iii)    The **Insured** shall have the right to give the **Insurer** written notice of **Claims** first made against any **Insured** during the **Discovery Period**, but only for **Wrongful Acts** occurring: (1) in the event of a cancellation, prior to the termination date for the Policy or **Coverage Part**; or (2) in the event of a nonrenewal, prior to the end of the **Policy Period**.

(iv)    Notwithstanding the foregoing, the **Discovery Period** shall not apply to a



## HISCOX

### Private Company Management Liability Insurance Policy
General Terms and Conditions

Reputation Risk Event occurring during the **Discovery Period**.

B.   Change in Control

If there is a **Change in Control** as defined in Clause IX. of these **General Terms and Conditions**, the **Named Entity** shall have the right within thirty (30) days before the end of the **Policy Period** to request an offer from the **Insurer** of a **Discovery Period** for a length of time that does not exceed those lengths offered by endorsement to this Policy per subparagraph A. above and subject to such terms, conditions and premium as the **Insurer** may reasonably decide.

In the event of a **Change in Control**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this subparagraph B.

C.   General

If any premium is owed for the Policy, any premium received from the **Named Entity** shall first be applied to the premium owing for the Policy with the remainder applied to the premium for the **Discovery Period**. The **Discovery Period** shall not take effect unless the outstanding premium for the Policy is paid in full and the premium for the **Discovery Period** is paid when due.

**IX. Change in Control**

If during the **Policy Period**:

A.   the **Named Entity** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

B.   any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Entity**;

(any of the above events herein referred to as a "**Change In Control**"),

then coverage under this Policy and any purchased **Coverage Part** shall continue until termination of such Policy or **Coverage Part**, but only with respect to **Claims** alleging **Wrongful Acts** committed, attempted or allegedly committed or attempted by the **Insureds** before such **Change In Control**.

This Policy and any purchased **Coverage Part** may not be canceled after the effective time of the **Change In Control**. The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in Clause VIII. of these **General Terms and Conditions**.

The **Named Entity** shall give the **Insurer** written notice of the **Change In Control** as soon as practicable, but no later than thirty (30) days after the effective date of the **Change In Control** together with such other information as the **Insurer** may require.

**X. Subrogation**

In the event of any payment under this Policy, the **Insurer** shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery thereof, and the **Insureds** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to effectively bring suit in the name of any **Insured**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Individual Insured** under this Policy unless such **Individual Insured** has been convicted of a criminal act, or been


HISCOX

## Private Company Management Liability Insurance Policy
General Terms and Conditions

determined by a final adjudication to have committed a dishonest or fraudulent act or to have obtained any profit or advantage to which such **Individual Insured** was not legally entitled.

Additionally, in the event that the **Insurer** shall for any reason pay **Indemnifiable Loss** on behalf of an **Individual Insured**, the **Insurer's** subrogation rights shall include, but not be limited to, the assertion of indemnification or contribution rights with respect to any such payments it makes or advances. Additionally, upon the **Insurer** making any payment of **Loss** within the Retention, the **Insurer** shall have a direct contractual right under this Policy to recover from the **Company**, or in the event of the bankruptcy of the **Company**, from the debtor-in-possession (or equivalent status outside the United States) such **Loss** which was paid within the Retention. Such direct contractual right of recovery against the **Company** shall be in addition to and independent of the **Insurer's** subrogation right pursuant to this Clause X. and any other rights the **Insurer** may have under applicable law.

**XI. Other Insurance**

With respect to all **Coverage Parts**, other than the **EPLI Coverage Part**, such insurance as is provided by this Policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is expressly written to be excess over any applicable **Limit of Liability** for this Policy or any **Coverage Part**. This Policy specifically shall be excess of any other policy pursuant to which any other insurer has a duty to defend a **Claim** for which this Policy may be obligated to pay **Loss**.

Such insurance as is provided by the **EPLI Coverage Part** shall be primary unless expressly written to be excess over other applicable insurance.

With respect to all **Coverage Parts**, in the event of a **Claim** against an **Insured** arising out of his or her service as an **Outside Entity Executive**, or a **Claim** against an **Insured** for the **Insured's** liability with respect to a leased **Employee** or independent contractor **Employee** as described in the Definition of **Employee** in the applicable **Coverage Part**, coverage as is afforded by this Policy shall be specifically excess of any: (i) indemnification provided by such **Outside Entity** or leasing company; and (ii) any other insurance provided to such **Outside Entity**, leasing company or independent contractor.

**XII. Representations and Severability**

In granting coverage under this Policy, it is agreed that the **Insurer** has relied upon the statements and representations contained in the **Application** for this Policy as being accurate and complete. All such statements and representations are the basis of this Policy and are to be considered as incorporated into this Policy.

The **Insureds** agree that in the event that the particulars and statements contained in the **Application** are not accurate and complete and materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under the Policy, then this Policy shall be void *ab initio* as to any **Insured** who knew as of the inception date of the **Policy Period** of the facts that were not accurately and completely disclosed in the **Application** (whether or not such **Insured** knew that such facts were not accurately and completely disclosed in the **Application**). Solely for purposes of determining whether this Policy shall be void *ab initio* as to an **Insured**, such aforesaid knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.



## Private Company Management Liability Insurance Policy
General Terms and Conditions

**XIII. Notice and Authority**

It is agreed that the **Named Entity** shall act on behalf of its **Subsidiaries** and all **Insureds** with respect to the giving of notice of any **Claim**, the giving and receiving of notice of cancellation and non-renewal, the payment of premiums and the receiving of any return premiums that may become due under this Policy, the receipt and acceptance of any endorsements issued to form a part of this Policy, the exercising or declining of the right to tender the defense of a **Claim** to the **Insurer** and the exercising or declining to exercise any right to a **Discovery Period**.

**XIV. Assignment**

No change in, modification of or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy which is signed by an authorized representative of the **Insurer**.

**XV. Action Against Insurer**

No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by final judgment against the **Insured** or by written agreement of the **Insured**, the claimant and the **Insurer**.

Any person or entity or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or entity shall have any right under this Policy to join the **Insurer** as a party to any action against the **Insured** or a **Company** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by the **Insured** or a **Company** or their legal representatives.

**XVI. Bankruptcy**

Bankruptcy or insolvency of any **Insured** or the **Insured's** estate shall not relieve the **Insurer** of its obligations nor deprive the **Insurer** of its rights or defenses under this Policy.

**XVII. Coverage Territory**

Where legally permissible, this Policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

**XVIII. Governmental Restrictions**

This Policy does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit the **Insurer** from providing insurance.

**XIX. Headings**

The descriptions in the headings and subheadings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

[The balance of this page is intentionally left blank.]



**HISCOX**

## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

In consideration of the premium charged and in reliance upon the statements made by the **Insureds** in the **Application**, which forms a part of this Policy, the **Insurer** agrees as follows:

**I. Insuring Agreements**

This **D&O Coverage Part** affords the following coverage:

**Coverage A:  Individual Insurance Coverage**

This **D&O Coverage Part** shall pay the **Loss** of an **Individual Insured** arising from a **Claim** first made against such **Individual Insured** during the **Policy Period** or the **Discovery Period** (if applicable) for any actual or alleged **Wrongful Act** of such **Individual Insured**, except when and to the extent that a **Company** has indemnified the **Individual Insured** for such **Loss**.

**Coverage B:  Company Reimbursement Coverage**

This **D&O Coverage Part** shall pay the **Loss** of a **Company** arising from a **Claim** first made against an **Individual Insured** during the **Policy Period** or the **Discovery Period** (if applicable) for any actual or alleged **Wrongful Act** of such **Individual Insured**, but only when and to the extent that such **Company** has indemnified such **Individual Insured** for such **Loss**.

**Coverage C:  Company Coverage**

This **D&O Coverage Part** shall pay the **Loss** of a **Company** arising from a **Claim** first made against a **Company** during the **Policy Period** or the **Discovery Period** (if applicable) for any actual or alleged **Wrongful Act** of a **Company**.

**Coverage D:  Reputation Coverage**

This **D&O Coverage Part** shall pay the **Reputation Loss** of a **Company** solely with respect to a **Reputation Risk Event** that first commences and is reported to the **Insurer** during the **Policy Period** up to the amount of the **Reputation Loss Limit of Liability**. Payment of any **Reputation Loss** under this **D&O Coverage Part** shall not waive any of the **Insurer's** rights under this Policy or at law. Coverage D shall apply regardless of whether a **Claim** is ever made against an **Insured** arising from such **Reputation Risk Event** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**.

A **Reputation Risk Event** first commences when a **Company** or any of its **Executives** first become aware of such **Reputation Risk Event** during the **Policy Period** and shall conclude at the earliest of the time when a risk management, public relations or law firm advises a **Company** that such **Reputation Risk Event** no longer exists or when the **Reputation Loss Limit of Liability** has been exhausted.



## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

### Coverage E: Derivative Demand Coverage

This **D&O Coverage Part** shall pay the **Investigation Costs** of a **Company** arising from a **Derivative Demand Investigation** in response to a **Derivative Demand** first made during the **Policy Period** or the **Discovery Period** (if applicable), up to the amount of the **Derivative Demand Limit of Liability**.

### Defense Provision

The **Insurer** does not assume any duty to defend; provided, however, the **Named Entity** may at its sole option tender to the **Insurer** the defense of a **Claim** for which coverage is provided by Clause VII. of this **D&O Coverage Part**. Regardless of whether the defense is so tendered, the **Insurer** shall advance **Defense Costs** in excess of the applicable Retention on behalf of the **Insured** prior to final disposition of the **Claim**.

With respect to Coverage E above, it shall be the duty of the **Company** and not the duty of the **Insurer** to conduct, investigate and evaluate any **Derivative Demand** against its own **Executives**; provided, however, that the **Insurer** shall be entitled to effectively associate in the investigation, evaluation, negotiation and settlement of any **Derivative Demand Investigation**.

### II. Definitions

A. **Claim** means:

   (i)   a written demand for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute of limitations);

   (ii)  a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by:

      (1)  service of a complaint or similar pleading;

      (2)  return of an indictment, information or similar document (in the case of a criminal proceeding); or

      (3)  receipt or filing of a notice of charges; or

   (iii) a civil, criminal, administrative or regulatory investigation of an **Individual Insured**:

      (1)  once such **Individual Insured** is identified in writing by such investigating authority as a person against whom a proceeding described in subparagraph (ii) of this Definition may be commenced; or

      (2)  in the case of an investigation by the Securities Exchange Commission ("**SEC**") or a similar state or foreign government authority, after:

         (a)  the service of a subpoena upon such **Individual Insured**; or

         (b)  the **Individual Insured** is identified in a written "Wells" or other notice from the **SEC** or a similar state or foreign government authority that describes actual or alleged violations of laws by such **Individual Insured**.

The term "**Claim**" shall also include any **Securities Claim** and, with respect to Coverage E above, any **Derivative Demand**.

B. **Cleanup Costs** means expenses (including, but not limited to, legal and professional fees) incurred in testing for, monitoring, cleaning up, removing,



## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

C. **Defense Costs** means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond), resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against an **Insured**, but excluding compensation of any **Individual Insured**. **Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

D. **Derivative Demand** means a written demand by one or more security holders of a **Company** without the assistance, participation or solicitation of any **Executive**, upon the board of directors (or equivalent management body) of such **Company** requesting that it file, on behalf of the **Company**, a civil proceeding in a court of law against any **Executive** of the **Company** for a **Wrongful Act** of such **Executive** in order to obtain relief from damages arising out of such **Wrongful Acts**.

E. **Derivative Demand Investigation** means the investigation by the **Company** or on behalf of the **Company** by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body) as to whether or not the **Company** should bring the civil proceeding demanded in a **Derivative Demand**.

F. **Derivative Demand Limit of Liability** means the dollar amount set forth in Item 6(b) of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

G. **Employee** means any past, present or future employee of a **Company**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal and temporary employee or volunteer of a **Company** in his or her capacity as such. An individual who is leased to a **Company** shall also be an **Employee**, but only if such **Company** provides indemnification to such leased individual in the same manner as is provided to such **Company's** own employees.

**Employee** shall also mean any other individual who is contracted to perform work for a **Company**, or who is an independent contractor for a **Company**, but only if such **Company** provides or is required to provide indemnification to such individual in the same manner as provided to such **Company's** own employees, pursuant to a written contract; provided, however, a **Company** may request that no coverage be provided under this **D&O Coverage Part** for an independent contractor named in a specific **Claim**. Such request must be made in writing and within ninety (90) days of the **Claim** being reported to the **Insurer**. If no such request is made, this **D&O Coverage Part** shall apply as if such **Company** determined that such independent contractor shall receive coverage.

H. **Executive** means:

   (i)   any past, present or future duly elected or appointed director, officer, management committee member (of a duly constituted committee) or member of the Board of Managers;

   (ii)  any past, present or future person in a duly elected or appointed position in an



**HISCOX**

## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

       entity which is organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in subparagraph (i) of this Definition; or

    (iii)   any past, present or future General Counsel and Risk Manager (or equivalent position) of the **Named Entity**.

I.    **Financial Insolvency** means: (i) the appointment by any government official, agency, commission, court or other governmental authority of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate an insolvent **Company**; (ii) the filing of a petition under the bankruptcy laws of the United States of America; or (iii) as to both (i) or (ii) of this Definition, any equivalent events outside the United States of America.

J.    **Foreign Jurisdiction** means any jurisdiction other than the United States of America or any of its territories or possessions.

K.    **Foreign Policy** means any standard executive management liability insurance policy (including all mandatory endorsements, if any) of the **Insurer** or an affiliate of the **Insurer**, which has been approved for sale within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this **D&O Coverage Part**. If more than one such policy exists, then **Foreign Policy** means the standard basic policy form typically offered for sale in that **Foreign Jurisdiction** for comparable risks by the **Insurer** or any other affiliate company of the **Insurer**. The term **Foreign Policy** shall not include any partnership management, pension trust or professional liability coverage.

L.    **Indemnifiable Loss** means **Loss** for which a **Company** has indemnified or is permitted or required to indemnify an **Individual Insured** pursuant to law, contract or the charter, by-laws, operating agreement or similar documents of such **Company**.

M.    **Individual Insured** means any:

    (i)    **Executive** of a **Company**;

    (ii)   **Employee** of a **Company**; or

    (iii)  **Outside Entity Executive**.

N.    **Insured** means:

    (i)    a **Company**; or

    (ii)   an **Individual Insured**.

O.    **Investigation Costs** means the reasonable and necessary costs, charges, fees and expenses consented to by the **Insurer** (including, but not limited to, attorney's fees and expert's fees but not including any settlement, judgment or damages and not including any compensation or fees of any **Individual Insured**) incurred by the **Company** or its board of directors (or any equivalent management body), or any committee of the board of directors (or any equivalent management body), solely in connection with a **Derivative Demand Investigation**.

P.    **Loss** means the amount that any **Insured** becomes legally obligated to pay in connection with any covered **Claim**, including, but not limited to:

    (i)    judgments (including pre-judgment and post-judgment interest on any covered



## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

portion thereof) and settlements;

(ii)   **Defense Costs**;

(iii)   damages, including punitive or exemplary damages and the multiple portion of multiplied damages relating to punitive or exemplary damages. The enforceability of this subparagraph (iii) shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages;

(iv)   with respect to Coverage D, **Reputation Loss**; and

(v)   with respect to Coverage E, **Investigation Costs**.

**Loss** shall not include: (i) any amount for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**; (ii) matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed; (iii) civil or criminal fines or penalties; (iv) taxes or tax penalties (whether imposed by federal, state, local or other governmental authority); or (v) the costs and expenses of complying with any injunctive relief or other form of non-monetary relief. **Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (i) through (v) of this subparagraph provided such **Defense Costs** result from a covered **Claim**.

**Loss** shall also not include any compensation, salary, wages, fees, benefits, overhead, charges or expenses of any **Insured**.

Q.   **Material Publication** means the publication, broadcast or circulation of unfavorable information regarding a **Company** which can reasonably be expected to lessen public confidence in the competence of the **Company** or its products and/or services, received or circulated in the geographic area of a **Company**.

R.   **Non-Indemnifiable Loss** means **Loss** for which a **Company** has neither indemnified nor is permitted or required to indemnify an **Individual Insured** pursuant to law or contract or the charter, by-laws, operating agreement or similar document of a **Company**.

S.   **Outside Entity** means:

(i)   any not-for-profit organization, other than a **Subsidiary** or **Affiliate**; or

(ii)   any other entity listed as an **Outside Entity** by endorsement to this Policy.

T.   **Outside Entity Executive** means: (i) any **Executive** of a **Company** serving in the capacity as director, officer, trustee, trustee emeritus or governor of an **Outside Entity**, but only if such service is at the specific request or direction of a **Company**; or (ii) any other person listed as an **Outside Entity Executive** in an endorsement to this **D&O Coverage Part**. It is understood and agreed that, in the event of a disagreement between a **Company** and an individual as to whether such individual was acting at the specific request or direction of such **Company**, this **D&O Coverage Part** shall abide by the determination of the **Named Entity** on this issue and such determination shall be made by written notice to the **Insurer** within ninety (90) days after the **Claim** is first reported to the **Insurer** pursuant to the terms of the Policy. In the event no determination is made within such period, this **D&O Coverage Part** shall apply as if the **Named Entity** determined that such **Individual Insured** was not acting at such **Company's** specific request or direction.



## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

U.  **Pollutants** means any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and Waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

V.  **Reputation Loss** means the following amounts incurred during the pendency of or within ninety (90) days prior to and in anticipation of a **Reputation Risk Event**, regardless of whether a **Claim** is ever made against an **Insured** arising from a **Reputation Risk Event** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**:

(i)  the reasonable and necessary fees and expenses incurred by a risk management, public relations or law firm in the performance of **Reputation Risk Management Services** for a **Company** arising from a **Reputation Risk Event**; and

(ii)  the reasonable and necessary fees and expenses incurred in the printing, advertising or mailing of **Reputation Risk Event** materials in the performance of **Reputation Risk Management Services** for a **Company** arising from a **Reputation Risk Event**.

W.  **Reputation Loss Limit of Liability** means the dollar amount set forth in Item 6(a) of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy).

X.  **Reputation Risk Event** means the public announcement of one of the following events which, in the good faith opinion of a **Company**, did cause or is reasonably likely to cause a **Material Publication**:

(i)  Management Risk Event: the death, incapacity or criminal indictment of any **Individual Insured** for whom a **Company** maintains key person life insurance;

(ii)  Bankruptcy/Debt Default/Downsizing: that: (1) a **Company** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of such **Company**; (2) a **Company** has defaulted or intends to default on any debt obligation; or (3) the closing or forced sale of a department/unit/division of a **Company**;

(iii)  Regulatory Risk Event: the commencement or threat of litigation or other proceedings by any governmental or regulatory agency against a **Company**;

(iv)  Bodily Injury/Abuse Risk Event: an accusation that an **Individual Insured** (or an individual an **Insured** is legally responsible for) has intentionally caused bodily injury to or death of any person in the performance of his or her duties with a **Company**;

(v)  Workplace Violence: an **Employee** of a **Company** was the victim of a violent crime while on the premises of such **Company**; or

(vi)  Child Abduction: a child was abducted or kidnapped while under the care or supervision of a **Company**.

Y.  **Reputation Risk Management Services** means those services performed by a risk management, public relations or law firm retained by the **Insured**, with the prior written consent of the **Insurer**, to advise the **Insured** on minimizing potential harm



## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

to a **Company** arising from a **Reputation Risk Event**, including maintaining and restoring public confidence in such **Company**.

Z.   **Securities Claim** means a **Claim** made against any **Insured**:

(i)   alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities, including, but not limited to, the purchase or sale, or offer or solicitation of an offer to purchase or sell securities which is:

(1)   brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale of, or offer or solicitation of an offer to purchase or sell, any securities of a **Company**; or

(2)   brought by a security holder of a **Company** with respect to such security holder's Interest in securities of such **Company**; or

(ii)   brought derivatively on behalf of a **Company** by a security holder of such **Company**.

AA.   **Settlement Opportunity** means an **Insurer** recommended settlement that is within any applicable **Limit of Liability** and that is acceptable to the claimant.

BB.   **Third Party Violation** means any actual or alleged harassment (including sexual harassment) or discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability), or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an **Individual Insured** or an applicant for employment with a **Company** or an **Outside Entity**, including, but not limited to, customers, vendors and suppliers.

CC.   **Wrongful Act** means:

(i)   with respect to any **Executive** or **Employee** of a **Company**, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Executive** or **Employee** in their respective capacities as such, or any matter claimed against such **Executive** or **Employee** of a **Company** solely by reason of his or her status as an **Executive** or **Employee** of a **Company**;

(ii)   with respect to a **Company** under Coverage C, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by a **Company**; or

(iii)   with respect to service on an **Outside Entity**, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by an **Outside Entity Executive** in his or her capacity as such, or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as an **Outside Entity Executive** of an **Outside Entity**.

**III. Worldwide Coverage**   For **Claims** made and maintained in a **Foreign Jurisdiction** for **Wrongful Acts** committed in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claims** the provisions of the **Foreign Policy** in the **Foreign Jurisdiction** that are more favorable to such **Insured** in the **Foreign Jurisdiction**; provided, however, this paragraph shall apply only to provisions more favorable by virtue of insuring clauses, extensions, definitions, exclusions, selection of other defense counsel, discovery or extended reporting period, notice and authority, dispute resolution process or order of payments provisions, if any, of



## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

the **Foreign Policy** when compared to the same or similar clauses of this **D&O Coverage Part**. This paragraph shall not apply to excess provisions or Policy provisions that address cancellation and non-renewal, duty to defend, defense within or without limits, taxes, claims made provisions or any other provision of this Policy intended to govern coverage worldwide.

All premiums, limits, Retentions, **Loss** and other amounts under this **D&O Coverage Part** are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this **D&O Coverage Part** (subject to the terms, conditions and limitations of this **D&O Coverage Part**) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Entity**) or, in United States of America dollars, at the rate of exchange published in <u>The Wall Street Journal</u> on the date the **Insurer's** obligation to pay such **Loss** is established (or if not published on such date the next publication date of <u>The Wall Street Journal</u>).

**IV. Exclusions**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.   arising out of, based upon or attributable to the:

   (i)   gaining of any profit or advantage to which any final adjudication establishes the **Insured** was not legally entitled;

   (ii)   purchase or sale by an **Insured** of securities of the **Company** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law if any final adjudication establishes that such Section 16(b) violation occurred;

   (iii)   payment to any **Insured** of any remuneration without the previous approval of the security holders of the **Company**, if any final adjudication establishes such payment was illegal; or

   (iv)   committing of any deliberate criminal or deliberate fraudulent act, or any willful violation of any statute, rule or law, if any final adjudication establishes that such deliberate criminal or deliberate fraudulent act, or willful violation of statute, rule or law was committed;

B.   alleging, arising out of, based upon or attributable to the facts alleged, or the same or **Related Wrongful Act(s)** alleged or contained in any claim or demand which has been reported, or in any circumstances of which notice has been given, under any prior insurer's policy or policy of which this **D&O Coverage Part** is a renewal or replacement or which it may succeed in time;

C.   alleging, arising out of, based upon or attributable to any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the **Continuity Date** for this **D&O Coverage Part**, or the alleging of any **Wrongful Act** which is the same or a **Related Wrongful Act** to that alleged in such pending or prior demand, suit, proceeding or in the underlying demand, order, decree or judgment;

D.   with respect to an **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if any **Insured**, as of such **Continuity Date**, knew or could


HISCOX

## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this **D&O Coverage Part**;

E.  alleging, arising out of, based upon or attributable to any actual or alleged act, error or omission of an **Individual Insured** serving in any capacity, other than as an **Executive** or **Employee** of a **Company**, or as an **Outside Entity Executive** of an **Outside Entity**;

F.  which is brought by or on behalf of a **Company** or any **Individual Insured**, other than an **Employee** of a **Company**; or which is brought by any security holder of the **Company**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, assistance of, active participation of or intervention of any **Company** or any **Executive** of a **Company**; provided, however, this exclusion shall not apply to:

   (i)  any **Claim** brought by an **Individual Insured** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a **Claim** which is covered by this Policy;

   (ii)  in any bankruptcy proceeding by or against a **Company**, any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Company**;

   (iii)  any **Claim** brought by any past **Executive** of a **Company** provided he/she has not served as an **Executive**, General Counsel, Risk Manager or consultant of a **Company** at any time during the three (3) years prior to the **Claim** being first made against any **Insured**; or

   (iv)  any **Claim** brought by an **Executive** of a **Company** formed and operating in a **Foreign Jurisdiction** against such **Company** or any **Executive** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

G.  for any **Wrongful Act** arising out of an **Individual Insured** serving in a capacity as an **Outside Entity Executive** if such **Claim** is brought by the **Outside Entity** or any **Executive** thereof; or which is brought by any security holder of the **Outside Entity**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the **Outside Entity**, the **Company**, or any **Executive** of the **Outside Entity** or the **Company**; provided, however, this Exclusion shall not apply to:

   (i)  any **Claim** brought by an **Executive** of an **Outside Entity** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a **Claim** that is covered by this **D&O Coverage Part**;

   (ii)  in any bankruptcy proceeding by or against an **Outside Entity**, any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Outside Entity**;

   (iii)  any **Claim** brought by any past **Executive** of an **Outside Entity** provided he/she has not served as an **Executive**, General Counsel, Risk Manager or consultant of an **Outside Entity** at any time during the three (3) years prior to the **Claim** being first made against any **Insured**; or

   (iv)  any **Claim** brought by an **Executive** of an **Outside Entity** formed and



## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

operating in a **Foreign Jurisdiction** against any **Outside Entity Executive** of such **Outside Entity**, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

H.  alleging, arising out of, based upon or attributable to any public offering of securities by a **Company**, an **Outside Entity** or an **Affiliate** or alleging, arising out of, based upon or attributable to the purchase or sale of such securities subsequent to such public offering; provided, however, this exclusion will not apply to:

   (i)  any purchase or sale of securities, whether debt or equity, in a transaction or a series of transactions that are exempt from registration under the Securities Act of 1933. Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium; provided, however, the **Named Entity** shall give the **Insurer** written notice of any exempt public offering, together with full particulars, as soon as practicable but not later than thirty (30) days after the effective date of the exempt public offering; or

   (ii)  any **Claim** made by any security holder of a **Company** for the failure of such **Company** to undertake or complete the initial public offering or sale of securities of such **Company**;

I.  alleging, arising out of, based upon or attributable to the purchase by a **Company** of securities of a "Publicly Traded Entity" in a transaction which resulted, or would result, in such entity becoming an **Affiliate** or a **Subsidiary** of a **Company**. An entity is a "Publicly Traded Entity" if any securities of such entity have previously been subject to a public offering;

J.  for bodily injury, emotional distress, mental anguish, sickness, disease or death of any person, or damage to, loss of use or destruction of any tangible property; provided, however, this Exclusion shall not apply to a **Securities Claim**;

K.  for any actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; provided, however, this Exclusion shall not apply to:

   (i)  **Non-Indemnifiable Loss**, other than **Non-Indemnifiable Loss** constituting **Cleanup Costs**; or

   (ii)  **Loss** in connection with a **Securities Claim**, other than **Loss** constituting **Clean-up Costs**;

L.  for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law;

M.  alleging, arising out of, based upon or attributable to:

   (i)  the refusal, failure or inability of any **Insured** to pay wages or overtime pay (or



## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

amounts representing such wages or overtime pay) for services rendered;

    (ii)   improper payroll deductions taken by any **Insured** from any **Employee** or purported **Employee**; or

    (iii)  failure to provide or enforce legally required meal or rest break periods;

N.   alleging, arising out of, based upon, or attributable to the employment of any individual or any wrongful employment practice, including, but not limited to, wrongful dismissal, discharge or termination, discrimination, harassment, retaliation or other employment-related claim;

O.   alleging, arising out of, based upon, or attributable to a **Third Party Violation**; provided, however, this Exclusion shall not apply to a **Securities Claim**;

P.   alleging, arising out of, based upon or attributable to:

    (i)   payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time domestic or foreign governmental or armed services officials, agents, representatives, employees or any members of their family or any entity with which they are affiliated;

    (ii)  payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time officials, directors, agents, partners, representatives, members, principal security holders, owners or employees, or affiliates (as defined in the Securities Exchange Act of 1934, including any of their officers, directors, agents, owners, partners, representatives, principal security holders or employees) or any customers of a **Company** or any members of their family or any entity with which they are affiliated; or

    (iii) political contributions, whether domestic or foreign;

Q.   with respect to Coverage C only:

    (i)   alleging, arising out of, based upon or attributable to plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, trade secret or any other intellectual property rights;

    (ii)  for any actual or alleged violation of any law, whether statutory, regulatory or common law, as respects the following activities: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships;

    (iii) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the **Company** or any other **Insured** under any express contract or agreement; provided, however, this Exclusion shall not apply to liability which would have attached in the absence of such express contract or agreement;

    (iv) for injury resulting from libel, slander, oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, assault, battery or loss of consortium;

    (v)  alleging, arising out of, based upon or attributable to any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted or allegedly committed or attempted in connection



**HISCOX**

## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under this **D&O Coverage Part**; provided, however, this Exclusion shall not apply to any **Securities Claim**; or

(vi) seeking fines or penalties or non-monetary relief against the **Company**; provided, however, that this exclusion shall not apply to any **Securities Claim**.

For the purpose of determining the applicability of the foregoing Exclusions, other than Exclusions B., C., D., F., G. and Q.: (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any **Individual Insured**; and (2) only facts pertaining to and knowledge possessed by any past, present or future chairman, chief executive officer or chief financial officer (or equivalent positions) of a **Company** shall be imputed to such **Company**.

However, Exclusions A. through Q. do not apply to **Reputation Loss** or **Reputation Risk Events**

The **Insurer** shall not be liable to make any payment for such **Reputation Loss**:

R.   arising out of, based upon or attributable to the facts alleged, or the same or related **Reputation Risk Event** alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this **D&O Coverage Part** is a renewal or replacement or which it may succeed in time;

S.   arising out of, based upon or attributable to any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the **Continuity Date** for this **D&O Coverage Part**, or involving any **Reputation Risk Event** which is the same or a related **Reputation Risk Event** to that alleged in such pending or prior demand, suit, proceeding or in the underlying demand, order, decree or judgment.

T.   arising out of, based upon or attributable to any actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; or

U.   arising out of, based upon or attributable to the hazardous properties of nuclear materials.

**V. Limits of Liability**

The following provisions shall apply in addition to the provisions of Clause IV. LIMITS OF LIABILITY of the **General Terms and Conditions**:

**Additional Executive Limit of Liability**

The **Additional Executive Limit of Liability**, if purchased as set forth in Item 6(c) of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy), will be an additional **Limit of Liability** in an amount not to exceed $500,000, which amount is in addition to, and not part of, the **Coverage Part Limit of Liability** applicable to this **D&O Coverage Part** as set forth in the Declarations ("**Additional Executive Limit of Liability**").

This **Additional Executive Limit of Liability** is available solely for **Loss** resulting from any **Claim** against any **Executive** of a **Company** covered under Coverage A of this **D&O**


**HISCOX**

## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

**Coverage Part.**

Notwithstanding anything in this Policy to the contrary, the **Additional Executive Limit of Liability** shall be excess of any insurance available that is specifically excess to this Policy and such excess insurance must be completely exhausted by payment of loss, damages or defense costs thereunder before the **Insurer** shall have any obligation to make any payment on account of the **Additional Executive Limit of Liability**.

**Reputation Insurance**

The maximum limit of the **Insurer's** liability for all **Reputation Loss** arising from all **Reputation Risk Events** occurring during the **Policy Period**, in the aggregate, shall be the amount set forth in the Declarations as the **Reputation Loss Limit of Liability**. This **Reputation Loss Limit of Liability** shall be the maximum limit of the **Insurer** under this **D&O Coverage Part** for Reputation Loss, regardless of the number of **Reputation Risk Events** occurring during the **Policy Period**; provided, however, the **Reputation Loss Limit of Liability** shall be part of, and not in addition to, the **Coverage Part Limit of Liability** applicable to this **D&O Coverage Part** as set forth in the Declarations.

**Investigation Costs For Derivative Demand**

The maximum limit of the **Insurer's** liability for all **Investigation Costs** arising from all **Derivative Demand Investigations** occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be the amount set forth in the Declarations as the **Derivative Demand Limit of Liability**.  The **Derivative Demand Limit of Liability** shall be the maximum limit of the **Insurer** under this **D&O Coverage Part** for **Investigation Costs** regardless of the number of **Derivative Demand Investigations** occurring during the **Policy Period** or the **Discovery Period** (if applicable), or the number of **Executives** subject to such **Derivative Demand Investigation**;  provided, however, that the **Derivative Demand Limit of Liability** shall be part of, and not in addition to, the **Coverage Part Limit of Liability** applicable to this **D&O Coverage Part** as set forth in the Declarations.

**VI. Retention**

The following provision shall apply in addition to the provisions of Clause V. RETENTION of the **General Terms and Conditions**:

The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy) for this **D&O Coverage Part**, such Retention to be borne by the **Insureds** and shall remain uninsured, with regard to: (i) all **Indemnifiable Loss**; and (ii) **Loss** of a **Company**. A single Retention shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Act(s)**.

In the event a **Company** is unable to pay an applicable Retention due to **Financial Insolvency**, then the **Insurer** shall commence advancing **Loss** within the Retention; provided, however, that the **Insurer** shall be entitled to recover the amount of **Loss** advanced within the Retention from such **Company** pursuant to Clause X. SUBROGATION of the **General Terms and Conditions**.

No Retention is applicable to **Reputation Loss** or **Investigation Costs** or to **Non-Indemnifiable Loss** under Coverage A.

**VII. Defense Costs,**          **Defense**



## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("D&O Coverage Part")

**Defense Counsel,
Settlements &
Judgments**

The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them.

Notwithstanding the foregoing, the **Insured** shall not retain defense counsel or incur any **Defense Costs** without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld.

### Insured's Option to Tender Defense

The **Insureds** shall have the right to tender the defense of the **Claim** to the **Insurer**, which right shall be exercised in writing by the **Named Entity** on behalf of all **Insureds** to the **Insurer** pursuant to the notice provisions of Clause VI. of the **General Terms and Conditions**. This right shall terminate if not exercised within thirty (30) days of the date the **Claim** is first made against an **Insured**. Further, from the date the **Claim** is first made against an **Insured** to the date when the **Insurer** accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of any **Insured** or the **Insurer** with respect to such **Claim**. Provided that the **Insureds** have complied with the foregoing, the **Insurer** shall be obligated to assume the defense of the **Claim**, even if such **Claim** is groundless, false or fraudulent. The assumption of the defense of the **Claim** shall be effective upon written confirmation sent thereof by the **Insurer** to the **Named Entity**. Once the defense has been so tendered, the **Insured** shall have the right to effectively associate with the **Insurer** in the defense and the negotiation of any settlement of any **Claim**, subject to the provisions of this Clause VII.

In the event the **Insurer** accepts the tender of defense of such **Claim**, the **Insurer** shall be responsible for the retention of defense counsel for such **Claim**.

### General Provisions

When the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause VII., the **Insurer** nevertheless shall advance, at the written request of the **Insured**, **Defense Costs** prior to the final disposition of a **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured**, severally according to their respective interests, in the event and to the extent that any such **Insured** shall not be entitled under the terms and conditions of this **D&O Coverage Part** to payment of such **Loss**.

The **Insurer** shall have the right to fully and effectively associate with each and every **Insured** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Insured** agrees to provide such information as the **Insurer** may reasonably require and to give the **Insurer** full cooperation and take such actions which, in such **Insured's** judgment, are deemed necessary and practicable to prevent or limit **Loss** arising from any **Wrongful Act.**

Additionally, the **Insured** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, incur any **Defense Costs** or **Reputation Loss** or retain a risk management, public relations or law firm without the prior written consent of the **Insurer**. If the **Insured** admits or assumes any liability in connection with any **Claim** without the consent of the **Insurer**, then the **Insurer** shall not have any obligation to pay **Loss** with respect to such **Claim**. Only those settlements, stipulated judgments, **Defense Costs** and **Reputation Loss** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this **D&O Coverage Part**. The **Insurer** shall not



**HISCOX**

## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

unreasonably withhold any consent required under this **D&O Coverage Part**, provided that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs**, or any portion thereof, to the extent such **Claim** (or any portion thereof) is not covered under the terms of this **D&O Coverage Part**. In addition, the **Insured** shall not take any action, without the **Insurer's** written consent, which prejudices the **Insurer's** rights under this **D&O Coverage Part**.

When the **Insurer** has assumed the defense of a **Claim** and the **Insureds** do not consent to the first **Settlement Opportunity** within thirty (30) days of the date the **Insureds** are first made aware of such **Settlement Opportunity** (or in the case of a **Settlement Opportunity** which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made), then, subject to any applicable **Limit of Liability**, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed: (1) the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer** ("**Settlement Opportunity Amount**"), plus (2) eighty percent (80%) of covered **Loss** in excess of such **Settlement Opportunity Amount**, it being a condition of this insurance that the remaining twenty percent (20%) of such covered **Loss** excess of such **Settlement Opportunity Amount** shall be carried by the **Insureds** at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until such **Settlement Opportunity Amount** exceeds the applicable Retention set forth in Item 4. of the Declarations (or Management Liability Supplemental Declarations if issued as a package policy) or to those **Claims** for which the **Insurer** has not assumed the defense.

With the express prior written consent of the **Insurer**, an **Insured** may select a defense counsel different from that selected by other **Insured** defendants if such selection is required due to an actual conflict of interest.

**VIII. Allocation**

In the event that the **Insured** tenders the defense of a **Claim** in accordance with Clause VII. above, the following allocation provision shall apply

If both **Loss** covered under this **D&O Coverage Part** and loss not covered under this **D&O Coverage Part** are incurred by the **Insureds** on account of any **Claim** because such **Claim** against the **Insureds** includes both covered and non-covered matters, then coverage under this **D&O Coverage Part** with respect to such **Claim** shall apply as follows:

A. **Defense Costs**: One hundred percent (100%) of **Defense Costs** incurred by the **Insured** on account of such **Claim** will be considered covered **Loss** subject to Clause VII. of this **D&O Coverage Part**; and

B. **Loss** other than **Defense Costs**: All remaining amounts incurred by the **Insured** on account of such **Claim** shall be allocated by the **Insurer** pro rata between covered **Loss** and non-covered loss based on the legal liability and financial exposures of the **Insureds** to covered and non-covered matters and, in the event of a settlement in such **Claim**, based on the number of covered and non-covered counts, causes of action or allegations against the **Insureds**.

If the **Insureds** and the **Insurer** cannot agree on an allocation of **Loss**:

A. no presumption as to allocation shall exist in any arbitration, suit or other



## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("**D&O Coverage Part**")

proceeding; and

B.   the **Insurer**, if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one (1) arbitrator selected by the **Insureds**, one (1) arbitrator selected by the **Insurer**, and a third independent arbitrator selected by the first two (2) arbitrators.

**IX. Derivative Demand Coverage**

It is understood and agreed that the **Company** shall be entitled to payment under Coverage E. of this **D&O Coverage Part** for reimbursement of its covered **Investigation Costs** ninety (90) days after: (i) the **Company** has made its final decision not to bring a civil proceeding in a court of law against any of its **Executives**, and (ii) such decision has been communicated to the security holders who made the **Derivative Demand** upon the **Company**. However, such payment shall be subject to an undertaking by the **Company**, in a form acceptable to the **Insurer**, that the **Company** shall return to the **Insurer** such payment in the event any **Company** or any security holder of the **Company** brings a **Claim** alleging, arising out of, based upon or attributable to any **Wrongful Acts** which were the subject of the **Derivative Demand**.

Nothing in this **D&O Coverage Part**, including Coverage E., shall be construed to afford coverage under this **D&O Coverage Part** for any **Claim** brought by the **Company** against one or more of its own **Executives**, other than **Investigation Costs** incurred in a covered **Derivative Demand Investigation**. Payment of any **Investigation Costs** under this **D&O Coverage Part** shall not waive any of the **Insurer's** rights under this Policy or at law.

**X. Public Securities Transactions**

If, during the **Policy Period**, the **Named Entity** intends to sell or offer to sell securities of any kind or nature whatsoever, issued at any time by the **Named Entity** in a transaction that is not exempt from registration under the Securities Act of 1933, as amended (a "**Transaction**"), the **Named Entity** will, no later than thirty (30) days prior to the effective date of the registration statement for such sale or offering, give the **Insurer** written notice of the proposed sale or offering and all information requested by the **Insurer** relating thereto. Unless the **Insurer** determines to issue coverage there shall in fact be no coverage for such **Transaction**.

If, during the **Policy Period**, a **Company** purchases securities of a "Publicly Traded Entity" in a transaction which would result in such entity becoming an **Affiliate** or a **Subsidiary** of a **Company**, the **Named Entity** will, no later than thirty (30) days prior to such entity becoming an **Affiliate** or **Subsidiary**, give the **Insurer** written notice of the proposed purchase and all information requested by the **Insurer** relating thereto. Unless the **Insurer** determines to issue coverage there shall in fact be no coverage for such "Publicly Traded Entity."

**XI. Order of Payments**

In the event of **Loss** arising from any **Claim** for which payment is due under the provisions of this **D&O Coverage Part** but which **Loss**, in the aggregate, exceeds the remaining available **Limit of Liability** applicable to this **D&O Coverage Part**, then the **Insurer** shall:

A.   first pay such **Loss** for which coverage is provided under Coverage A of this **D&O**



## Private Company Management Liability Insurance Policy
Directors & Officers Liability Coverage Part ("D&O Coverage Part")

      Coverage Part, then with respect to whatever remaining **Limit of Liability** is available after payment of such **Loss**;

B.    then pay such **Loss** for which coverage is provided under Coverage B of this **D&O Coverage Part**, and

C.    then pay such **Loss** for which coverage is provided under Coverage C, D or E of this **D&O Coverage Part**.

In the event of **Loss** arising from a **Claim** for which payment is due under the provisions of this **D&O Coverage Part** (including those circumstances described in the first paragraph of this Clause XI., the **Insurer** shall at the written request of the **Named Entity**:

A.    first pay such **Loss** for which coverage is provided under Coverage A of this **D&O Coverage Part**, then

B.    either pay or hold payment for such **Loss** for which coverage is provided under Coverage B, C, D or E of this **D&O Coverage Part**.

In the event that the **Insurer** withholds payment under Coverage B, C, D or E of this **D&O Coverage Part** pursuant to the above request, then the **Insurer** shall at any time in the future, at the request of the **Named Entity**, release such **Loss** payment to a **Company**, or make such **Loss** payment directly to the **Individual Insured** in the event of covered **Loss** for any **Claim** covered under this **D&O Coverage Part** pursuant to Coverage A of this **D&O Coverage Part**.

The **Financial Insolvency** of any **Company** or any **Individual Insured** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this **D&O Coverage Part** pursuant to this Clause XI.


[The balance of this page is intentionally left blank]



# HISCOX

## ECONOMIC AND TRADE SANCTIONS POLICYHOLDER NOTICE

Hiscox is committed to complying with the U.S. Department of Treasury Office of Foreign Assets Control (OFAC) requirements. OFAC administers and enforces economic sanctions policy based on Presidential declarations of national emergency. OFAC has identified and listed numerous foreign agents, front organizations, terrorists, and narcotics traffickers as Specially Designated Nationals (SDN's) and Blocked Persons. OFAC has also identified Sanctioned Countries. A list of Specially Designated Nationals, Blocked Persons and Sanctioned Countries may be found on the United States Treasury's web site http://www.treas.gov/offices/enforcement/ofac/.

Economic sanctions prohibit all United States citizens (including corporations and other entities) and permanent resident aliens from engaging in transactions with Specially Designated Nationals, Blocked Persons and Sanctioned Countries. Hiscox may not accept premium from or issue a policy to insure property of or make a claim payment to a Specially Designated National or Blocked Person. Hiscox may not engage in business transactions with a Sanctioned Country.

A Specially Designated National or Blocked Person is any person who is determined as such by the Secretary of Treasury.

A Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States.

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy may be rendered void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

(1) Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to US economic trade sanctions;

(2) Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country government, where any action in connection with such claim or suit is prohibited by US economic or trade sanctions;

(3) Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to US economic or trade sanctions;

(4) Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country government, where any activities related to such property are prohibited by US economic or trade sanctions; or

(5) Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to US economic or trade sanctions.

Please read your Policy carefully and discuss with your broker/agent or insurance professional. You may also visit the US Treasury's website at http://www.treas.gov/offices/enforcement/ofac/.



**HISCOX**

**NOTICE TO NEW YORK INSUREDS**
NY Regulation 121 – Claims-Made Policies

**NEW YORK POLICYHOLDER NOTICE – ADDENDUM TO THE APPLICATION**
Management Liability Insurance Policy (Private Companies)

The following notice is being provided in accordance with New York Law:

**THIS POLICY IS WRITTEN ON A CLAIMS-MADE BASIS**

**THIS POLICY DOES NOT PROVIDE COVERAGE FOR CLAIMS ARISING OUT OF INCIDENTS, OCCURRENCES OR ALLEGED WRONGFUL ACTS WHICH TOOK PLACE PRIOR TO THE APPLICABLE PRIOR ACTS DATE (IF ANY).**

**THIS POLICY COVERS ONLY THOSE CLAIMS ACTUALLY MADE AGAINST THE INSURED WHILE THE POLICY REMAINS IN EFFECT.  ALL COVERAGE UNDER THIS POLICY CEASES UPON TERMINATION OF THE POLICY, EXCEPT COVERAGE FOR CLAIMS REPORTED DURING THE AUTOMATIC DISCOVERY PERIOD OR DURING ONE OF THE OPTIONAL DISCOVERY PERIODS, IF PURCHASED.**

**THE NATURE OF CLAIMS-MADE COVERAGE IS SUCH THAT DURING THE FIRST SEVERAL YEARS OF CONTINUING CLAIMS-MADE COVERAGE, CLAIMS-MADE PREMIUMS ARE COMPARATIVELY LOWER THAN OCCURRENCE COVERAGE PREMIUM.  AN INSURED CAN EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF OVERALL RATE LEVEL INCREASES, UNTIL THE CLAIMS-MADE RELATIONSHIP REACHES MATURITY.**

**THE FOLLOWING DISCOVERY PERIODS ARE AVAILABLE UPON TERMINATION OF COVERAGE:**

| Discovery Period |
| --- |
| |
| **60 Day Automatic Discovery Period** |
| **1 Year Optional Discovery Period** |
| **2 Year Optional Discovery Period** |
| **3 Year Optional Discovery Period** |
| **4 Year Optional Discovery Period** |
| **5 Year Optional Discovery Period** |
| **6 Year Optional Discovery Period** |
| **> 6 Year Optional Discovery Period** |

**POTENTIAL COVERAGE GAPS MAY ARISE UPON EXPIRATION OF THE DISCOVERY PERIODS.**



**HISCOX**

## NOTICE TO NEW YORK INSUREDS
NY Regulation 121 – Claims-Made Policies

**NEW YORK POLICYHOLDER NOTICE – ADDENDUM TO THE DECLARATIONS**
Management Liability Insurance Policy (Private Companies)

The following notice is being provided in accordance with New York Law:

**THIS POLICY IS WRITTEN ON A CLAIMS-MADE BASIS**

**THIS POLICY DOES NOT PROVIDE COVERAGE FOR CLAIMS ARISING OUT OF INCIDENTS, OCCURRENCES OR ALLEGED WRONGFUL ACTS WHICH TOOK PLACE PRIOR TO THE APPLICABLE PRIOR ACTS DATE (IF ANY).**

**THIS POLICY COVERS ONLY THOSE CLAIMS ACTUALLY MADE AGAINST THE INSURED WHILE THE POLICY REMAINS IN EFFECT.  ALL COVERAGE UNDER THIS POLICY CEASES UPON TERMINATION OF THE POLICY, EXCEPT COVERAGE FOR CLAIMS REPORTED DURING THE AUTOMATIC DISCOVERY PERIOD OR DURING ONE OF THE OPTIONAL DISCOVERY PERIODS, IF PURCHASED.**

**THE NATURE OF CLAIMS-MADE COVERAGE IS SUCH THAT DURING THE FIRST SEVERAL YEARS OF CONTINUING CLAIMS-MADE COVERAGE, CLAIMS-MADE PREMIUMS ARE COMPARATIVELY LOWER THAN OCCURRENCE COVERAGE PREMIUM.  AN INSURED CAN EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF OVERALL RATE LEVEL INCREASES, UNTIL THE CLAIMS-MADE RELATIONSHIP REACHES MATURITY.**

**THE FOLLOWING DISCOVERY PERIODS ARE AVAILABLE UPON TERMINATION OF COVERAGE:**

| Discovery Period | Maximum Percentage of Annual Premium |
|---|---|
|  |  |
| **60 Day Automatic Discovery Period** | 0% |
| **1 Year Optional Discovery Period** | 125% |
| **2 Year Optional Discovery Period** | 175% |
| **3 Year Optional Discovery Period** | 225% |
| **4 Year Optional Discovery Period** | 250% |
| **5 Year Optional Discovery Period** | 275% |
| **6 Year Optional Discovery Period** | 300% |
| **> 6 Year Optional Discovery Period** | 325% |

**POTENTIAL COVERAGE GAPS MAY ARISE UPON EXPIRATION OF THE DISCOVERY PERIODS.**



**HISCOX**

encourage courage®

# Don't wait!

## Get complimentary legal advice and risk management services now.

Hiscox has partnered with the law firm **Littler Mendelson** to offer a risk management tool for policyholders: HR Help

### What is LittlerHR Help?

LittlerHR Help is a risk management service for Hiscox EPLI policyholders. Its web portal contains a variety of HR resources/forms, legal information, and analysis. Hiscox policyholders can also correspond directly with Littler lawyers to help them stay compliant.

### How to access LittlerHR Help

Hiscox EPLI policyholders can register by visiting www.LittlerHRhelp.com and entering their Hiscox EPLI policy number. More than one account can be assigned to a company, as long as email addresses are unique.

### Benefits to Hiscox EPLI policyholders

- No cost for risk management tools and legal advice
- Online and email access to legal experts at Littler
- Employment law updates, newsletters and related publications
- Compendium of online employment law resources: sample federal and state employment policies, practices, and human resources sample forms
- State and national employment law summaries and reference materials
- 50 state surveys on various employment law essentials
- Complimentary registration to Littler's nationwide breakfast briefing series
- Complimentary access to Littler's webinars and podcasts
- Discounted rates for various Littler events

### About Littler Mendelson

Littler Mendelson (Littler) is the largest global employment and labor law practice with more than 1,000 attorneys in over 60 offices worldwide. Littler represents management in all aspects of employment and labor law, and has served as a single source solution provider to the global employer community for over 70 years.

# EXHIBIT "B"



Tracie V. Coleman-Tucker, JD
Sr. Specialty Claim Consultant
Claims | Management Liability
Phone: (248) 233-5144
Fax:     (508) 635-1777
trcoleman@hanover.com

July 27, 2017

Dana Mondella Bentz
President
Dell's Maraschino Cherries Co.
175 Dikeman Street
Brooklyn, NY 11231

### VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Re:   Insured:           Dell's Cherries, LLC
      Claimant:          Antoinette Mondella
      Policy:            Private Company Advantage with Employment Practices Liability Insurance
                         Coverage Part
      Policy No.:        LHY D019412 00
      Policy Period:     08/22/2016 to 08/22/2017
      Claim No.:         15-00929777

Dear Ms. Mondella Bentz,

Please allow this correspondence to confirm our receipt on July 24, 2017, of additional information regarding the above-referenced claim. This matter was originally tendered to Hanover Insurance Company (hereinafter "Hanover") on March 2, 2017, for consideration of coverage under the policy provided.

After reviewing the new information in conjunction with the terms and conditions of the above-referenced Policy, we are constrained to advise you that coverage is not available for this matter. The rationale for our coverage position is set forth below in further detail.

### I.    POLICY INFORMATION

The Employment Practices Liability Insurance Policy ("EPLI") for Dell's Cherries, LLC ("Insured") was issued by Hanover under Policy No. LHY D019412 00 ("Policy") with effective dates of coverage August 22, 2016 to August 22, 2017. The Policy provides a $1,000,000 maximum aggregate Limit of Liability subject to a Retention of $10,000, for each Employment Claim and Third Party Claim, which applies to both Damages and Defense Expenses. Please note that Defense Expenses are included in the Limit of Liability.

## II.  BACKGROUND/FACTS OF LOSS

These are the facts of loss as we understand them:  On June 19, 2017, a Complaint was filed in the New York State Supreme Court, Kings County, on behalf of Antoinette Mondella ("Plaintiff") against Dell's Maraschino Cherries Co., Inc., Dell's Cherries, LLC, and Dell's Holding Company, Inc., under Index No. 511978/2017.

In the Complaint, the Plaintiff alleges that she became the sole owner of Dell's Maraschino Cherries Co., Inc. in 1995. According to the Plaintiff, her son Arthur Mondella, Jr. asked her to sell her shares to him for $102,000 in 2004.  Thereafter, she contends her son assumed control of the Company despite the fact that the purchase price had not been paid. According to the Plaintiff, Mr. Mondella made repeated promises to pay, but failed to do so prior to his death in February, 2015.

The Plaintiff further contends that she made a number of loans to the Company at her son's request, but that not all of them were repaid.  Specifically, she contends that the Company owes her $92,937.01, not including interest.  Although demands for payment have allegedly been made and the records of the Company allegedly reflect that payment is owed, the Plaintiff asserts that the Company and its successors-in-interest have continuously refused to satisfy the debt.

It is further alleged that the Company has historically paid for the Plaintiff's vehicle lease and insurance. To that end, she claims she notified the Company in April, 2015, that she would be obtaining a new vehicle lease.  According to the Plaintiff, the Company did not object and paid for her lease and insurance through December, 2016.  However, she alleges she was advised in January, 2017, that the Company would no longer cover the costs and she was subsequently terminated.  Thereafter, she paid the balance of her lease personally in the amount of $10,084.51.

As a result, the Plaintiff's Complaint includes the following allegations:

1. Breach of contract;
2. Unjust enrichment;
3. Promissory estoppel;

Please note that the Plaintiff's allegations have been recited here for informational purposes only, and are not construed as true or accurate by Hanover.

## III.  COVERAGE EVALUATION

Based upon information received to date, no coverage is available under the applicable Policy.  The following contains a discussion of pertinent provisions of the Policy which served as the basis for Hanover's coverage decision.

As an initial matter, we have reviewed this matter for coverage under the following Insuring Agreement:

I.  **INSURING AGREEMENT**
   The **Insurer** will pay on behalf of the **Insured**, **Loss** which the **Insured** is legally obligated to pay due to an **Employment Claim** or a **Third Party Claim**, first made against the **Insured** during the **Policy Period**, or the Extended Reporting Period if applicable.

3 | P a g e

We further direct your attention to the policy definitions relevant to this coverage analysis:

III.     **DEFINITIONS**

**Claim** means an **Employment Claim** and a **Third Party Claim.**

**Employment Claim** means:

A.   Any:
1.   Written demand first received by an Insured for monetary or non-monetary relief including a written demand for reinstatement, reemployment, re-engagement or injunctive relief;
2.   Civil proceeding commenced by the service of a complaint or similar pleading;
3.   Formal administrative or regulatory proceeding commenced by the filing of charges, formal investigative order or similar document, including a proceeding before the Equal Employment Opportunity Commission or any similar governmental agency;
4.   A Notice of Violation or Order to Show Cause arising from an audit conducted by the Office of Federal Contract Compliance Programs.
5.   Arbitration or mediation proceeding commenced by the receipt of a demand for arbitration or mediation or similar document;

which is brought and maintained by or on behalf of a past, present or prospective **Employee** or **Independent Contractor** of an **Insured Entity** against an **Insured** for an **Employment Wrongful Act**, including any appeal therefrom; or

B.   Written request first received by an **Insured** to toll or waive a statute of limitations related to a potential **Employment Claim** described in A.1. through A.6. above.

However, **Employment Claim** shall not include any arbitration or grievance proceeding pursuant to a collective bargaining agreement.

**Loss** means **Defense Expenses** and the amount the **Insured** is legally obligated to pay as a result of a **Claim** including:

A.   Monetary judgments, awards or settlements, pre-judgment interest, back and front pay, compensatory damages;
B.   Damages;

**Loss** does not include the portion of such amount that constitutes:

1.   Civil, criminal or administrative fines, taxes or penalties;
2.   The cost to comply with or provide any accommodation for persons with disabilities or any other status which is protected under any federal, state, or local statutory law or common law anywhere in the world including the Americans with Disabilities Act, the Civil Rights Act of 1964, or any amendments to or rules or regulations promulgated under any such law

including, without limitation, matters which would constitute the elements of a crime or misdemeanor, of this Coverage Part, or matters which would constitute the elements of a crime or misdemeanor, of this Coverage Part, or matters of entitlement to non-employment related benefits, provided directly or indirectly from a government, governmental agency or political subdivision;

3. Any future wages or benefits of any reinstated **Employee** or wages or benefits associated with the continued employment of any **Employee**;
4. Any matter deemed uninsurable by law;
5. Benefits or contributions payable under an employee benefit plan;
6. Salary, wages, commission, benefits or other monetary payments which constitute severance payments or payments pursuant to a notice period;
7. Any amount not indemnified by the **Insured Entity** for which an **Insured** Entity for which an Insured is absolved from payment by reason of any covenant, agreement or court order; or
8. Any amount allocated to non-covered loss pursuant to Section IX. Allocation, of this Coverage Part

**Employment Wrongful Act** means any actual or alleged:

A. **Discrimination;**
B. **Retaliation;**
C. **Sexual Harassment;**
D. **Workplace Harassment;**
E. **Wrongful Termination;**
F. Breach of an **Employment Contract;**
G. **Workplace Tort;**

committed, attempted or allegedly committed or attempted by an **Insured Entity** or by an **Insured Individual** while acting in his or her capacity as such.

The Policy in force is designed to address Employment Practices claims. However, the Plaintiff failed to allege an **Employment Wrongful Act** as that term is defined in the Policy. Specifically, the Plaintiff's allegations concern debts allegedly owed to her by the Insured for a personal loan and a vehicle lease. The Plaintiff makes no allegations of breach of an **Employment Contract**, nor does she make any other allegation that falls within the ambit of an **Employment Wrongful Act**. As a result, the Insuring Agreement of the Policy has not been triggered. Therefore, Hanover will not provide a defense or indemnity to Dell's Maraschino Cherries Co., Inc., Dell's Cherries, LLC, or Dell's Holding Company, Inc. for this matter.

## IV.    CONCLUSION

Please note that the foregoing is not intended to be exhaustive or exclusive and other terms and conditions of the Policy may also serve to limit or bar coverage for this matter. However, in light of the foregoing, it does not appear necessary to address further policy terms and conditions. Nevertheless, Hanover does not in any way waive the right to raise additional defenses to coverage when appropriate, and the foregoing should not be construed as the only basis upon which Hanover's coverage position rests. Therefore, in addition to the issues set forth above, Hanover reserves all of its rights and defenses

5 | P a g e

under the Policies, at law, and otherwise in connection with this matter, including but not limited to the right to amend or supplement this correspondence as circumstances may warrant.

Hanover does wish to provide full benefits for claims that are covered under its policies. Thus, if you have any additional information which you believe is relevant to our analysis of coverage, please forward the information to us at your earliest convenience and we will be happy to consider it.

Sincerely,

*Tracie V. Coleman-Tucker*

Tracie V. Coleman-Tucker, JD
Senior Specialty Claim Consultant
The Hanover Insurance Company

cc:     Sandra Dokes/Garber Atlas Fries & Assoc., Inc./3070 Lawson Blvd., Oceanside, NY 11572
        (Via E-Mail: sdokes@gafinsurance.com)

25800 Northwestern Highway | Suite 420 | Southfield, MI 48075 | phone: 248-233-5144 | facsimile: 508-635-1777



# NYSCEF - Kings County Supreme Court
# Confirmation Notice

This is an automated response for Supreme Court / Court of Claims cases.  The NYSCEF site has received your electronically filed document(s) for:

Dell's Marashiano Cherries, Co., Inc. et al - v. - Hanover Insurance Group et al

518964/2017

Assigned Judge: None Recorded

## Documents Received on  10/02/2017 12:52 PM

| Doc # | Document Type | Motion # |
|-------|---------------|----------|
| 1 | SUMMONS + COMPLAINT | |
| | Does not contain an SSN or CPI as defined in 202.5(e) or 206.5(e) | |
| 2 | EXHIBIT(S) A | |
| | Does not contain an SSN or CPI as defined in 202.5(e) or 206.5(e) | |
| 3 | EXHIBIT(S) B | |
| | Does not contain an SSN or CPI as defined in 202.5(e) or 206.5(e) | |

## Filing User

| | | | |
|--|--|--|--|
| Name: | **RICHARD ALBERT LUTHMANN** | | |
| Phone #: | **718-447-0003** | E-mail Address: | **rluthmann@luthmannfirm.com** |
| Fax #: | | Work Address: | **1811 Victory Boulevard** |
| | | | **Staten Island, NY 10314** |

## E-mail Notifications

An e-mail notification regarding this filing has been sent to the following address(es) on 10/02/2017 12:52 PM:

**LUTHMANN, RICHARD ALBERT - rluthmann@luthmannfirm.com**

**NOTE: If submitting a working copy of this filing to the court, you must include as a notification page firmly affixed thereto a copy of this Confirmation Notice.**

Hon. Nancy T. Sunshine, Kings County Clerk and Clerk of the Supreme Court - kcco-efile@nycourts.gov
Phone: Phone: 347-404-9766 or 347-404-9762    Website: https://www.nycourts.gov/courts/2jd/kingsclerk/index.shtml

NYSCEF Resource Center -  EFile@nycourts.gov
Phone: (646) 386-3033    Fax: (212) 401-9146    Website: www.nycourts.gov/efile

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
— — — — — — — — — — — — — — — — — — — — — — — — — —x
Dell's Marashiano Cherries, Co., Inc., Dell's Cherries,
LLC, Dell's Holding Company

                 Plaintiff/Petitioner,

      -against-                        Index No. _518964-2017_____

Hanover Insurance Group, Hiscox Insurance Company

                      Defendant/Respondent.
— — — — — — — — — — — — — — — — — — — — — — — — — —x

## NOTICE OF COMMENCEMENT OF ACTION SUBJECT
## TO MANDATORY ELECTRONIC FILING

PLEASE TAKE NOTICE that the matter captioned above has been commenced as an electronically filed case in the New York State Courts Electronic Filing System ("NYSCEF") as required by CPLR § 2111 and Uniform Rule § 202.5-bb (mandatory electronic filing). This notice is being served as required by that rule.

NYSCEF is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and unrepresented litigants who have consented to electronic filing.

Electronic filing offers significant benefits for attorneys and litigants, permitting papers to be filed with the County Clerk and the court and served on other parties simply, conveniently, and quickly. NYSCEF case documents are filed with the County Clerk and the court by filing on the NYSCEF Website, which can be done at any time of the day or night on any day of the week. The documents are served automatically on all consenting e-filers as soon as the document is uploaded to the website, which sends out an immediate email notification of the filing.

The NYSCEF System charges no fees for filing, serving, or viewing the electronic case record, nor does it charge any fees to print any filed documents. Normal filing fees must be paid, but this can be done on-line.

**Parties represented by an attorney:** An attorney representing a party who is served with this notice must either: 1) immediately record his or her representation within the e-filed matter on the NYSCEF site; or 2) file the Notice of Opt-Out form with the clerk of the court where this action is pending. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the operational knowledge to comply with e-filing requirements. [Section 202.5-bb(e)]

**Parties not represented by an attorney: Unrepresented litigants are exempt from efiling. They can serve and file documents in paper form and must be served with documents in paper form.** However, an unrepresented litigant may participate in efiling.

For information on how to participate in e-filing, unrepresented litigants should contact the appropriate clerk in the court where the action was filed or visit www.nycourts.gov/efile-unrepresented. Unrepresented litigants also are encouraged to visit www.nycourthelp.gov or contact the Help Center in the court where the action was filed. An unrepresented litigant who consents to e-filing may cease participation at any time. However, the other parties may continue to e-file their court documents in the case.

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: efile@nycourts.gov).

Dated:  10-2-2017 _____

_____
Signature

1811 Victory Blvd. _____
Address

Richard A. Luthmann, Esq. _____
Name

Staten Island, NY 10314 _____
Address

The Luthmann Law Firm, PLLC _____
Firm Name

718-447-0003 _____
Phone

rluthmann@luthmannfirm.com _____
E-Mail

To:    Hanover Insurance Group _____

25800 Northwestern Hgwy. - 420 _____

Southfield, MI 48075 _____

9/3/15



# NYSCEF - Kings County Supreme Court
# Confirmation Notice

This is an automated response for Supreme Court / Court of Claims cases.  The NYSCEF site has received your electronically filed document(s) for:

**Dell's Marashiano Cherries, Co., Inc. et al - v. - Hanover Insurance Group et al**

**518964/2017**

Assigned Judge: None Recorded

## Documents Received on   10/03/2017 03:18 PM

| Doc # | Document Type | Motion # |
|-------|---------------|----------|
| 4 | CONSENT TO EFILING | |
| | Does not contain an SSN or CPI as defined in 202.5(e) or 206.5(e) | |

## Filing User

| | | | |
|---|---|---|---|
| Name: | RICHARD ALBERT LUTHMANN | | |
| Phone #: | 718-447-0003 | E-mail Address: | rluthmann@luthmannfirm.com |
| Fax #: | | Work Address: | 1811 Victory Boulevard |
| | | | Staten Island, NY 10314 |

## E-mail Notifications

An e-mail notification regarding this filing has been sent to the following address(es) on 10/03/2017 03:18 PM:

LUTHMANN, RICHARD ALBERT - rluthmann@luthmannfirm.com

**NOTE: If submitting a working copy of this filing to the court, you must include as a notification page firmly affixed thereto a copy of this Confirmation Notice.**

**Hon. Nancy T. Sunshine, Kings County Clerk and Clerk of the Supreme Court - kcco-efile@nycourts.gov**
Phone: Phone: 347-404-9766 or 347-404-9762    Website: https://www.nycourts.gov/courts/2jd/kingsclerk/index.shtml

**NYSCEF Resource Center - EFile@nycourts.gov**
Phone: (646) 386-3033    Fax: (212) 401-9146    Website: www.nycourts.gov/efile

FILED: KINGS COUNTY CLERK 10/06/2017 04:32 PM INDEX NO. 518964/2017

NYSCEF DOC. NO. 1 Case 1:17-cv-06451-CBA-ST Document 1-1 Filed 11/06/17 Page 84 of 85 PageID #: 90 RECEIVED NYSCEF: 10/06/2017

## AFFIDAVIT OF SERVICE THROUGH THE SECRETARY OF STATE

Index #  518964/2017                                    Purchased/Filed:

STATE OF NEW YORK             SUPREME COURT             KINGS COUNTY

*Dell's Marashiano Cherries, Co., Inc, et al.*                    Plaintiff

against

*Hanover Insurance Group, et ano.*                              Defendant

STATE OF NEW YORK
COUNTY OF ALBANY          SS.:

_____ James Perone _____ , being duly sworn, deposes and says: deponent is over

the age of eighteen (18) years; that on _____ October 5, 2017 _____ , at __11:45am__ , at the office of the

Secretary of State of the State of New York in the City of Albany, New York deponent served the annexed

Summons and Verified Complaint

on

_____ Hanover Specialty Insurance Brokers, Inc. s/h/a Hanover Insurance Group _____ , the

Defendant in this action, by delivering to and leaving with _____ Nancy Dougherty _____ ,

AUTHORIZED AGENT in the Office of the Secretary of State, of the State of New York, personally at the

Office of the Secretary of State of the State of New York, __2__ true copies thereof and that at the time

of making such service, deponent paid said Secretary of State a fee of __40__ dollars; That said service

was made pursuant to Section __306 Business Corporation Law__ .

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office

of the Secretary of the State of New York, duly authorized to accept such service on behalf of said

defendant.

Description of the person served: Approx. Age: __55__  Approx. Wt: __130lbs__  Approx. Ht: __5'3"__

Color of skin: __White__  Hair color: __Black__  Sex: __Female__  Other: _____

Sworn to before me on this

__5th__ day of _____ October, 2017 _____

_____
SCOTT SCHUSTER
NOTARY PUBLIC, State of New York
NO. 01SC6308636, Albany County
Commission Expires July 28, 2018

_____
James Perone
Attny's File No.
Invoice·Work Order # SP1710770

*Servico. Inc. -  PO Box 871 - Albany. New York 12201 - Ph 518-463-4179*

FILED: KINGS COUNTY CLERK 10/06/2017 04:32 PM          INDEX NO. 518964/2017

NYSCEF DOC. NO. 1  Case 1:17-cv-06451-CBA-ST  Document 1-1  Filed 11/06/17  Page 85 of 85 PageID #: 91   RECEIVED NYSCEF: 10/06/2017

## AFFIDAVIT OF SERVICE THROUGH THE SECRETARY OF STATE

Index #  518964/2017                                    Purchased/Filed:

STATE OF NEW YORK                    SUPREME COURT                    KINGS COUNTY

---

*Dell's Marashiano Cherries, Co., Inc, et al.*                    Plaintiff

against

*Hanover Insurance Group, et ano.*                              Defendant

---

STATE OF NEW YORK
COUNTY OF ALBANY                 SS.:

_____ James Perone _____, being duly sworn, deposes and says: deponent is over

the age of eighteen (18) years; that on _____ October 5, 2017 _____, at _11:45am_, at the office of the

Secretary of State of the State of New York in the City of Albany, New York deponent served the annexed

Summons and Verified Complaint

on

_____ Hiscox Insurance Company Inc. Fict. Name Hiscox Insurance Claims Services _____, the

Defendant in this action, by delivering to and leaving with _____ Nancy Dougherty _____,

AUTHORIZED AGENT in the Office of the Secretary of State, of the State of New York, personally at the

Office of the Secretary of State of the State of New York, __2__ true copies thereof and that at the time

of making such service, deponent paid said Secretary of State a fee of _____ 40 _____ dollars; That said service

was made pursuant to Section __306 Business Corporation Law_.

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office

of the Secretary of State of the State of New York, duly authorized to accept such service on behalf of said

defendant.

Description of the person served:  Approx. Age: __55__   Approx. Wt: __130lbs__   Approx. Ht: __5'3"__

Color of skin: __White__   Hair color: __Black__   Sex: __Female__   Other: _____

Sworn to before me on this

__5th__ day of _____ October, 2017 _____

_____
SCOTT SCHUSTER
NOTARY PUBLIC, State of New York
NO. 01SC6308636, Albany County
Commission Expires July 28, 2018

_____
James Perone
Attny's File No.
Invoice•Work Order # SP1710774

*SERVICO. INC. - PO BOX 871 - ALBANY. NEW YORK 12201 - PH 518-463-4179*